ROTHENBERG, J.
Tricam Industries, Inc. (“Tricam”) and Home Depot, etc., (collectively, “the defendants”) appeal from a final judgment entered pursuant to a jury verdict in favor of Diana Coba (“the plaintiff’), as personal representative of the estate of Roberto Coba (“the decedent”), and denial of their motion to set aside the verdict. The plaintiff cross-appeals from a denial of her motion for a new trial. Because the verdict was fundamentally inconsistent, we reverse the trial court’s denial of the defendants’ motion to set aside the verdict, and remand for entry of judgment in favor of the defendants. In addition, because we find the trial court did not abuse its discretion in concluding that the plaintiff failed to satisfy her burden of establishing that a new trial was warranted based on juror non-disclosure, we affirm the trial court’s denial of the plaintiffs motion for a new trial.
The decedent, a civil engineer, fell from a thirteen foot Gorilla Professional Type 1A 4-in-l aluminum ladder (“the ladder”) manufactured by Tricam and sold by Home Depot, and died ten days later. In her complaint against the defendants, the plaintiff alleged theories of: (1) strict liability for manufacturing and design defects; and (2) negligence for failing to manufacture, design, market, sell and distribute the ladder in a reasonably safe condition, and failing to warn of the ladder’s dangerous conditions. At trial, however, the evidence presented and arguments made by the plaintiff went solely to the ladder’s design.
*107 Specifically, the plaintiffs expert, Dr. Farhad Booeshaghi, a consulting engineer and accident reconstructionist, testified that the ladder was defectively designed because it was capable of falsely appearing to be in a locked position since the pins in the “J locks,” which attached to the ladder’s outer rails, “elick[ed]” as if they were locked even when they were not. He explained that when that occurred, the ladder was capable of temporarily holding a person’s weight, giving the user a false sense of security. Dr. Booeshaghi opined that at the time of the accident, the ladder was in such a “false lock” position, and the false-lock-failure, combined with the decedent’s weight, caused the ladder to “telescope”[1] at full extension, impelling the ladder forward and launching the decedent backward. He also opined that the inclusion of an additional crossbar would have increased the structural rigidity of the ladder and prevented the ladder from telescoping. Lastly, he testified that the accident would not have occurred had the locks been properly locked, and that it was ultimately the decedent’s responsibility to properly lock the ladder.
Conversely, the defendants’ expert, Mr. Jon Ver Halen, a consulting engineer, testified that the ladder was not defectively designed. He opined that it was impossible for a “false lock” to occur on an articulating ladder, and explained that, given the “factor of safety” built into the ladder’s “load factor,” it could not have structurally failed when used in its intended manner. In addition, Mr. Ver Halen explained that, based on the ladder’s length and likely position against the house, and the location and types of marks and deformations left on the wall, floor, and ladder, the accident could not have been caused by the telescoping process described by Dr. Booesha-ghi. Instead, according to Mr. Ver Halen, the physical evidence suggested that the ladder was set up on a “relatively slippery” surface, enabling the ladder to slide as the decedent climbed it, and ultimately giving way, causing the decedent to fall.
After the plaintiff rested her case, the defendants moved for a directed verdict, noting that neither Dr. Booeshaghi nor any other witness testified regarding any flaw in the manufacturing process, the warnings that were provided, or the sale or distribution of the ladder, and that the warnings on the ladder were not introduced into evidence. The trial court denied the motion. However, prior to closing arguments, the plaintiff expressly withdrew her manufacturing defect claim and, given the lack of evidence on the remaining allegations, the trial court limited the (1) strict liability jury instructions to the standard for finding a design defect, and (2) the negligence instructions to the standard for finding negligence in the “design, distribution, and sale” of the ladder. The jury was not instructed on either manufacturing defect or warning defect standards, and trial counsel for the plaintiff and the defendants neither argued nor sought a finding regarding a failure to warn.
The jury returned a verdict finding that there was no design defect, but that the negligence of Tricam and Home Depot was a legal cause of the decedent’s death, and awarded the decedent’s daughter $25,000 for lost past support and services; $45,000 for her future lost support and services; and $1.5 million for intangible damages; and apportioned eighty percent comparative negligence to the decedent. The ver- *108 diet form was crafted and filled out as follows:

VERDICT FORM

We, the jury, return the following verdict:
1. Did Defendants, Tricam Industries and/or Home Depot, place the ladder on the market with a design defect, which was a legal cause of Roberto Coba’s death?
YES_NO X
2. Was there negligence on the part of Defendants, Tricam Industries and/or Home Depot, which was a legal cause of Roberto Coba’s death?
YES X NO_
After the verdict was read, neither the plaintiff nor the defendants objected to the verdict. However, after the jury was discharged, counsel for the plaintiff conducted an investigation of the jurors; discovered that several jurors had failed to disclose their litigation history; and thereafter filed motions to interview jurors and for a new trial. Additionally, the defendants filed a motion to set aside the verdict and to enter judgment in accordance with their motion for a directed verdict. The trial court granted the plaintiffs motion to interview the jurors, and noticed a hearing on the remaining issues.
At the hearing, the plaintiff argued a new trial was required based on juror Willy Gamboa’s failure to disclose his litigation history, which included a divorce, three foreclosures, and two collection actions. The plaintiffs trial counsel represented that if he would have known about juror Gamboa’s litigation history, he would have peremptorily struck him.
Conversely, the defendants argued that the verdict should be set aside because the jury’s finding of negligence was fundamentally inconsistent with its finding that there was no design defect. Specifically, the defendants argued that there was insufficient evidence to sustain a verdict of negligence given that all of the plaintiffs evidence at trial related to the ladder’s purported defective design, and the jury found that the ladder did not have a design defect. The trial court denied the plaintiffs motion for a new trial and the defendants’ motion to set aside the verdict and enter judgment in accordance with their motion for a directed verdict. These appeals followed.
The trial court erred in denying the defendants’ motion to set aside the verdict in accordance with the defendants’ motion for a directed verdict.
On appeal, the defendants argue that the jury’s finding of negligence was fundamentally inconsistent with its finding that there was no design defect because there was insufficient evidence presented to sustain a verdict of negligence with respect to anything other than a design defect. Thus, the defendants argue the trial court erred in denying the defendants’ motion to set aside the verdict in accordance with their motion for a directed verdict. We agree.
“In reviewing a trial court’s denial of a motion for a directed verdict, an appellate court must review the evidence in the light most favorable to the nonmoving party.” Miami-Dade Cnty. v. Asad, 78 So.3d 660, 663-64 (Fla. 3d DCA 2012). A denial of a motion for a directed verdict must be reversed “if there is ‘no evidence upon which the jury could legally base a verdict’ in favor of the non-moving party.” Id. at 664 (quoting Posner v. Walker, 930 So.2d 659, 665 (Fla. 3d DCA 2006)).
The plaintiff concedes that the verdict in this case was inconsistent, but argues that the defendants waived their objection to the inconsistency by failing to *109 object before the jury was discharged. Normally, we would agree. The Fourth and Fifth District Courts of Appeal, however, have carved out an exception to this general rule where the inconsistency “is of a fundamental nature.” See Nissan Motor Co. v. Alvarez, 891 So.2d 4, 8 (Fla. 4th DCA 2004); Am. Catamaran Racing Ass’n (NACRA) v. McCollister, 480 So.2d 669, 671 (Fla. 5th DCA 1985). Because we agree with the well-reasoned opinions of our sister courts to the north, and because there is no case in this district which has held to the contrary,[2] we adopt the “fundamental nature” exception as applied in this context.
Because NACRA and Alvarez are similar to the facts in the instant case, and because we agree with and adopt the holdings in each, we briefly examine them herein. The plaintiff in NACRA brought a wrongful death action against NACRA, which manufactured a catamaran that capsized and resulted in the death of Christine Wapniarski. At trial, the plaintiff claimed there was a design defect, and the trial court instructed the jury on two theories as to NACRA’s liability, strict liability and negligence, both for which were premised on NACRA’s negligent design of the boat. NACRA, 480 So.2d at 671. Specifically, the jury was asked the following two questions:
1. Was the sailboat defective when sold and, if so, was the defect a legal cause of the death of Christine Wapniarski?
2. Was there negligence on the part of defendant NACRA which was the legal cause of the death of Christine Wapniarski?
Id. The jury answered “No” to the first question and Wes” to the second question. Id. Although the verdict was clearly inconsistent, NACRA failed to object to the inconsistency before the jury was discharged. Nevertheless, the Fifth District reversed and remanded for entry of judgment in NACRA’s favor based on its conclusion that the inconsistency was of a “fundamental nature” because the only evidence of negligence offered against NA-CRA at trial related to its alleged design defect. Id.
The appellee counters that NACRA waived appellate review of the inconsistency by not objecting before the jury was discharged. True, a party must object to defective verdict forms or inconsistent verdicts before the jury is discharged to preserve the claim, Higbee v. Dorigo, 66 So.2d 684 (Fla.1958); Papcun v. Piggy Bag Discount Souvenirs Food and Gas Corp., 472 So.2d 880 (Fla. 5th DCA 1985). Here, however, the inconsistency is of a fundamental nature because the only evidence of negligence offered against NACRA at trial related to its alleged negligent design. See Papcun v. Piggy Bag Discount Souvenirs Food and Gas Corp.; Robbins v. Graham, 404 So.2d 769 (Fla. 4th DCA 1981). But, the jury found that there *110 was no design defect. And if that were true, there was no other evidence to sustain the jury’s verdict in this case. Cf. Cowart v. Kendall United Methodist Church, 476 So.2d 289 (Fla. 3rd DCA 1985) (while verdict not inconsistent, no evidence to support it). Accordingly, we have no alternative but to reverse the judgment and remand for entry of judgment in NACRA’s favor.
Id. (footnotes omitted).
Similarly, in Alvarez, the Fourth District rejected the plaintiffs’ argument that the defendants waived their challenge to an inconsistent verdict by failing to object before the jury was discharged, adopting the fundamental nature exception articulated in NACRA. Alvarez, 891 So.2d at 8. Alvarez is on “all-fours” with the instant case.
Alvarez and her husband sued Nissan alleging claims of (1) strict liability based on a design defect and (2) negligence based on the design, manufacture, assembly, distribution, and/or sale of the vehicle, and failure to properly warn purchasers concerning the vehicle’s dangerous propensities. Despite these allegations in the complaint, the plaintiffs at trial confined their proof of negligence solely to the claim of a negligent design defect. The plaintiffs presented no evidence on the issue of negligent failure to warn or the other theories raised in the complaint.
The jury was presented with a verdict form nearly identical to those presented in NACRA and the instant case, which required the jury to answer the following questions:
1. Did the Defendants ... place the Nissan Pathfinder on the market with a defect which was the legal cause of damage to the Plaintiff, Andrea Alvarez?
2. Was there negligence on the part of the Defendants ... which was a legal cause of damage to the Plaintiff, Andrea Alvarez?
Id. at 6. The jury returned a verdict finding that there was no design defect, but that Nissan was negligent.
The Fourth District reversed, holding that the verdict was fundamentally inconsistent, reasoning as follows:
The Alvarezes’ Amended Complaint alleged causes of action for both strict liability and negligence. As part of the negligence claim, the Alvarezes specifically alleged that Nissan failed to give proper warnings. However, at trial, the record reflects that the Alvarezes abandoned the failure to warn claim and instead focused entirely on the claim of a design defect. If the only evidence of negligence that the Alvarezes presented at trial related to the design defect, then the jury could not have found Nissan liable for negligence while finding that the vehicle did not contain a design defect.

Id.

In rejecting the plaintiffs’ argument that the defendants waived their objection to the inconsistent verdict by failing to object before the jury was discharged, the Fourth District: noted the fundamental nature exception recognized by the Fifth District in NACRA; found the facts in NACRA analogous; concluded that, as in NACRA, the inconsistency was of a fundamental nature; and reversed the judgment and remanded for entry of judgment in the defendants’ favor. Id. at 8.
In this case, like in Alvarez, the plaintiff alleged claims of strict liability and negligence based on manufacturing and design defects, the distribution and sale of the products, and failure to warn, but then limited the presentation of evidence at trial solely to the product’s purported design defect. The plaintiff did not elicit any *111 testimony regarding a manufacturing or warning defect, did not introduce the warnings on the ladder into evidence, did not proffer evidence regarding negligence in the sale or distribution of the ladder, and expressly withdrew her manufacturing defect claim prior to closing arguments. Additionally, the jury was not instructed on either manufacturing defect or warning defect standards. Nevertheless, like in Alvarez, the jury returned a verdict finding that there was no design defect while also finding that the defendants were negligent. As in Alvarez, we conclude such a finding was fundamentally inconsistent because, “[i]f the only evidence of negligence [the plaintiff] presented at trial related to the design defect, then the jury could not have found [the defendants] liable for negligence while finding that the [product] did not contain a design defect.” Id. at 6.
In sum, we agree with the analysis and holdings in NACRA and Alvarez. We hold that a party does not waive a challenge to a purported inconsistency in a verdict by failing to object prior to the discharge of the jury when the inconsistency is of a “fundamental nature.” Applying this reasoning to the case at bar, we hold that, given the jury’s determination that there was no design defect, a finding of negligence is fundamentally insupportable because the only evidence of negligence proffered by the plaintiff related to a negligent design.
As the dissent emphasizes, in most cases featuring inconsistent verdicts, the appropriate remedy is to remand for a new trial because the jury’s intent cannot be determined from the verdict. See Grossman v. Greenberg, 619 So.2d 406, 409 (Fla. 3d DCA 1993) (“We remand for a new trial on the damages because we find the jury verdict inconsistent and the jury’s intent cannot be determined from the verdict.”); see also Spitz v. Prudential-Bache Sec., Inc., 549 So.2d 777, 779 (Fla. 4th DCA 1989). However, this case constitutes one of the few exceptions to the general rule. As we have explained, the only evidence offered against the defendants related to a purported design defect, and the jury specifically found there was no design defect. Because there was no evidence to support any other cause of action, there remains no issue to be resolved on remand. We therefore reverse the trial court’s denial of the defendants’ motion to set aside the verdict in accordance with its motion for a directed verdict, and instruct the trial court to enter judgment in favor of the defendants. See NACRA, 480 So.2d at 671.
We note that this issue could and should have been easily avoided had proper attention been paid to the need to revise the verdict form to reflect the narrower issues for the jury’s consideration based on the change in the plaintiffs case. As we explained, the first question on the jury form asked:
1. Did Defendants, Tricam Industries and/or Home Depot, place the ladder on the market with a design defect, which was a legal cause of Roberto Coba’s death?
After the jury answered “No” to this question, the second question on the verdict form was no longer necessary, given the absence of any evidence, argument, or instruction on negligent manufacturing or negligent failure to warn. Unfortunately, neither the parties nor the trial court recognized the need to revise the proposed verdict form to reflect this. The verdict form should have been revised to add the following language after the first question:
If your answer to Question One is “No,” your verdict is for defendants, and you should not proceed further except to date and sign this verdict form and return it to the courtroom.
*112 However, despite the failure of the trial court to amend the verdict form, once the jury answered “No” to question one, that finding rendered legally irrelevant any further finding by the jury. The fact that the jury answered question two (as the verdict form erroneously required) is of no moment where, as here, the negative answer to the first question required the court, as a matter of law, to enter judgment for the defendants.
The trial court did not abuse its discretion in denying the plaintiffs motion for a new trial based on juror Gamboa’s non-disclosures.
“We review an order granting or denying a motion for new trial based on juror nondisclosure for abuse of discretion.” Pereda v. Parajon, 957 So.2d 1194, 1197 (Fla. 3d DCA 2007) (citing Palm Beach Cnty. Health Dep’t v. Wilson, 944 So.2d 428, 430 (Fla. 4th DCA 2006)). Entitlement to a new trial on the basis of a juror’s non-disclosure requires the complaining party to demonstrate that: “(1) the information is relevant and material to jury service in the case; (2) the juror concealed the information during questioning; and (3) the failure to disclose the information was not attributable to the complaining party’s lack of diligence.” Pereda, 957 So.2d at 1197 (citing Roberts v. Tejada, 814 So.2d 334, 339 (Fla.2002)).
Even assuming, without deciding, that the plaintiff satisfied the first two requirements, we conclude the trial court did not abuse its discretion in denying the plaintiffs motion for a new trial. As shown below, the record supports the conclusion that juror Gamboa’s failure to disclose his litigation history was attributable to the plaintiffs lack of diligence, and that, consequently, the third prong was not satisfied.
In analyzing the “due diligence prong,” the Florida Supreme Court has stated:
Of course, attorneys must be mindful in this process to ask such questions in terms which an average citizen not exposed to a panoply of legal processes would be capable of understanding. Trial counsel must take special care during the interrogation process to explain in a lay person’s terms all the types of legal actions which may be encompassed by the term “litigation.”
Roberts, 814 So.2d at 344. Accordingly, the Court held:
The “due diligence” test requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose, particularly if it pertains to an area about which an average lay juror might not otherwise have a working understanding. Thus, resolution of this “diligence” issue requires a factual determination regarding whether the explanations provided by the judge and counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information.
Id.; see also Pereda, 957 So.2d at 1198.
In this case, the jury questionnaire asked, “Have you or any family member ever been sued or have you sued someone else? (This includes claims made by or against you which never went to court).” And, during voir dire, the trial court asked the jurors whether they had “ever been sued.” Juror Gamboa responded “No” to each of these questions, but after rendering the verdict, disclosed having been involved in a divorce, foreclosure actions, and collection cases. However, the context in which the trial court asked the jurors about their litigation history, coupled with the jurors’ responses, suggests the jurors may not have fully understood *113 the nature of the inquiry. As shown below, the plaintiffs trial counsel did not make any effort whatsoever to explain the types of legal actions that were encompassed in the trial court’s questions.
During voir dire, the trial court gave a brief summary of the subject matter at issue before the court, a personal injury, and immediately thereafter asked the jurors whether they had ever been sued.
THE COURT: This is a dispute where the plaintiff alleges that there was injury that was caused by the defendants, and they’re asking to be compensated for that injury. In other words, this is a dispute that will boil down to monetary damages. Okay?
In this case, the plaintiff, they have the burden of proving by the greater weight of the evidence that there was an injury, that it was caused by an act of the defendants, and that they suffered damages as a result of that injury. Okay?
It is their burden. If they don’t meet their burden, you have to return a verdict in favor of the defendants. Okay?
First row sitting here, have any of you ever been sued?
(emphasis added).
All of the responses by the jurors were disclosures of prior personal injury suits. For instance, prospective juror Martinez disclosed that she was sued by her insurance company because of a car accident in which she was injured. In addition, prospective juror Herny-Nembhard answered that she was involved in two accidents, still suffers from a “bad injury,” but was not sued. None of the jurors disclosed having been sued in any other type of case.
The trial court then followed up by questioning the jurors as to whether they had ever sued someone else.
THE COURT: The first row up here, my next question to you is: Have any of you ever sued anyone else?
[[Image here]]
THE COURT: Remember, my first question was have you ever been sued. Now this question is: Have you ever sued someone else?
Again, all of the responses related to personal injury suits. For instance, prospective juror Knox disclosed that she sued a hospital arising out of an injury and two surgeries on her left ankle, resulting in a disability. Prospective Juror Suso disclosed that she sued an insurance company after being involved in a car accident and suffering a whiplash injury. Prospective Juror Herny-Nembhard disclosed that she sued an insurance company after being involved in a car accident and suffering an injury. Prospective juror Pimienta disclosed that he sued an office building for an injury he suffered caused by faulty furniture. Finally, prospective juror Clark disclosed that his wife was involved in a worker’s compensation lawsuit arising out of an injury to her wrist she sustained while on the job. None of the jurors disclosed having sued anybody for anything other than suits arising out of personal injury situations.
Given the context of the trial court’s questions, and the jurors’ responses thereto, the trial court could have reasonably concluded that the jurors did not fully understand the nature of the inquiry, and that a reasonable attorney, exercising due diligence, should have asked follow-up questions or have explained to the jurors that the trial court’s questions were not limited to personal injury suits.
The plaintiff argues that the trial court precluded her from doing so based on the trial court’s instruction to:
not ask the same exact question that’s on the questionnaire.... For example, if *114 they say “I live in Homestead,” don’t ask them, “Where do you live?” You can, of course, ask any follow-up questions that you believe are relevant to them being able to serve as a fair and impartial juror.
(emphasis added). We disagree.
First, we note that the plaintiff did not object to the trial court’s instruction, and therefore waived any error resulting therefrom. Furthermore, the plain wording of the trial court’s instruction only precluded trial counsel from asking the “same exact question” asked on the questionnaire, and did not prevent trial counsel from elaborating or explaining what the questions meant, or correcting any obvious misunderstanding resulting from the questions. If trial counsel was unsure regarding the scope of the trial court’s instructions, he should have asked for clarification by the trial court.
Additionally, we note that during the trial, the trial court suggested that the attorneys run the jurors’ litigation histories electronically before the jury commenced deliberations and while an alternate juror was still available. While the plaintiffs trial counsel noted he had encountered problems regarding undisclosed juror litigation history in previous cases, he stated he was satisfied with the jurors’ responses and declined the offer to run the jurors. We acknowledge that the Florida Supreme Court, in Roberts, held that trial counsel are not categorically required to run the jurors’ litigation histories before the end of trial in order to satisfy the “due diligence” prong. Roberts, 814 So.2d at 344. Trial attorneys are, however, permitted to conduct such searches, just as trial courts are permitted to suggest them. Notably, the Florida Supreme Court, in Roberts, did not hold that trial courts cannot, in the appropriate circumstances, consider a trial counsel’s refusal to run a juror’s litigation history as one of several factors under a due diligence inquiry.
Given this set of facts, we cannot say the trial court abused its discretion in denying the plaintiff’s motion for a new trial. Accordingly, we reverse the final judgment and the trial court’s order denying the defendants’ motion to set aside the verdict in accordance with their motion for a directed verdict, and remand with instructions to enter judgment in favor of the defendants. In addition, we affirm the trial court’s order denying the plaintiff’s motion for a new trial.
Reversed in part; affirmed in part; and remanded with instructions.
EMAS, J., concurs.

. According to Dr. Booeshaghi, in engineering terms, a product "telescopes” when "the inside, relative to the outside, goes in.... When it goes in ... the "J” locks and the side rails ... start deforming relative to each other.”

. In J.T.A. Factors, Inc. v. Philcon Services, Inc., 820 So.2d 367, 371 (Fla. 3d DCA 2002), this Court held that the defendant waived its challenge to a purported inconsistency in the jury verdict by failing to object prior to the discharge of the jury. This Court expressly adopted the general rule that "a contention that a jury verdict is inconsistent must be raised at the time the verdict is read and before the jury is released in order to allow an opportunity to cure....” However, in Phil-con, this Court was not presented with a situation in which the verdict was fundamentally unsupportable. In fact, this Court expressly determined that the plaintiff proffered sufficient evidence to meet the elements of the relevant cause of action at issue in that case, tortious interference. See id. ("[W]e find no merit to J.T.A.'s arguments that the evidence presented at trial was insufficient to meet the elements of tortious interference and therefore affirm without further discussion.”).