WARNER, J.
Appellant, Hillsboro Management, LLC, d/b/a Living Legends Retirement Center (“Hillsboro”), appeals a final judgment in favor of appellee Karen Pagono, as personal representative of the Estate of Frances Tremblay, for negligence. The final judgment awarded both compensatory and pu *622 nitive damages. After trial, the appellant discovered that one of the jurors had a significant history of litigation, which he failed to disclose in voir dire. The court, however, denied the motion for new trial based upon juror misconduct without conducting a juror interview. We reverse for the court to permit a juror interview and then reconsider the motion based upon the total circumstances presented.
Frances Tremblay, a 98-year-old woman, was admitted to Living Legends Retirement Center by her granddaughter. Even though the staff noted on her admission chart that Tremblay did not use or need any walking assistance, on the very first day of residence she fell and she experienced multiple falls thereafter when she was not attended by the staff. In all she experienced nineteen falls in the twenty-six days she was in the facility. She suffered significant injuries, although there was a dispute as to whether these injuries caused her death. After her death, Pagono, Tremblay’s granddaughter, instituted a negligence action against Hills-boro for failing to properly supervise Tremblay and for violating her statutory rights pursuant to sections 429.297 and 429.298, Florida Statutes. The testimony at trial showed many instances of failing to report Tremblay’s condition, failing to supervise her when the staff knew she was at risk of falling, and other even more intentional acts directed at her. For purposes of the issues addressed in this appeal, we need not delve further into the factual predicate for the liability and damage awards.
At trial, the prospective jurors were asked whether they had ever been involved in the trial of a lawsuit, either as a plaintiff, a defendant, or a witness. Juror R.F. disclosed that his daughter had been involved in an accident in the 1980s resulting in litigation, and his wife was also involved. He stated that nothing about that case would affect his ability to serve in this case. Later, in voir dire, Juror R.F. was again questioned about the case, and he again assured the attorneys that the case would not affect his service as a juror in this case.
Hillsboro’s attorney also asked the jury about litigation. He said:
You were asked, folks, about litigation, particularly medical malpractice, claims against nursing homes, automobile accidents. But let me ask that question about your involvement in litigation in a more expansive and broader definition of litigation, which can include problems with your credit card company, bankruptcy, landlord/tenant problems, slip and falls, commercial disputes, contract disputes, probate litigation, maybe a claim where there is no lawsuit or lawyer involved, but just you against somebody else.
Does anybody have ... any other litigation that hasn’t been disclosed already?
Several other potential jurors offered additional litigation experience at that point. Hillsboro’s attorney then specifically addressed Juror R.F., asking, “[Juror R.F.], the only litigation involving your family was the lawsuit involving your youngest daughter; is that correct sir?” Juror R.F. replied, 'Tes.” Eventually Juror R.F. was chosen as part of the jury panel.
After the jury came back with a verdict of $145,828.05 in past medical expenses, $750,000 in non-economic damages, and $1.5 million in punitive damages, Hillsboro filed a motion for new trial based upon several issues and also alleging juror misconduct, because Juror R.F. had made materially false statements in voir dire regarding his litigation history. Hillsboro listed twelve actions filed in Broward County involving a person with the same *623 name, one of which was the automobile accident that Juror R.F. mentioned in voir dire. The list included a domestic violence injunction, several foreclosures, and civil damage suits. Hillsboro also filed an affidavit of its trial attorney. In this sworn statement, he asserted “that in view of [Juror R.F.’s] extensive litigation history and the character of same, I likely would have exercised a peremptory challenge with regard to [Juror R.F.].” He stated that the litigation history was relevant to Juror R.F.’s honesty and impartiality; that Juror R.F.’s participation in negligence and foreclosure cases “may have given him a bias and/or prejudice against litigation proceedings;” that each suit for civil damages involved a corporate entity, “leading to a question of bias against corporate entities like” Hillsboro; that the domestic violence accusations give doubt to Juror R.F.’s “temperament and fitness to serve as a juror;” and, that because one of the issues in the case involved allegations that a Hillsboro worker “slammed” Tremblay’s head into a table, his domestic violence cases suggest that he might be biased. The trial attorney stated that the failure to disclose these statements “deprived me of the fair opportunity to ask questions of him in voir dire regarding same and make an informed judgment, which would have likely resulted in a peremptory challenge.” Hillsboro requested a juror interview of Juror R.F., and, subject to the results of the juror interview, a new trial.
At the hearing, Pagono opposed the motion, suggesting that several of the lawsuits may not have involved the juror, and most were too remote in time to be material. The trial court denied the motion without granting a juror interview. It also denied the motion for new trial as to the substantive issues raised. As well, it denied Hillsboro’s motion for remittitur as to both compensatory and punitive damages. This appeal follows.
De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995), established a three-part test for determining whether a juror’s non-disclosure of information during voir dire requires a new trial:
First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure' to disclose the information was not attributable to the complaining party’s lack of diligence.
Id. at 241 (citing Skiles v. Ryder Truck Lines, Inc., 267 So.2d 379, 380 (Fla. 2d DCA 1972)). With respect to the nondisclosure of prior litigation, the court in Roberts ex rel. Estate of Roberts v. Tejada, 814 So.2d 334, 341 (Fla.2002), which controls this case, explained that “[t]o be material, a prospective juror’s litigation history does not necessarily have to involve an action similar to the one in which he or she may be required to serve,” but also noted that not “all prior litigation history (while relevant) is per se material.” Id. The court further explained materiality:
“No ‘bright line’ test for materiality has been established and materiality must be based on the facts and circumstances of each case. Leavitt v. Krogen, 752 So.2d 730 (Fla. 3d DCA 2000). Nondisclosure is considered material if it is substantial and important so that if the facts were known, the defense may have been influenced to peremptorily challenge the juror from the jury.”
Id. (quoting Garnett v. McClellan, 767 So.2d 1229, 1230-31 (Fla. 5th DCA 2000)) (emphasis supplied). This is based on the premise that “[l]awyers representing clients in litigation are entitled to ask, and receive truthful and complete responses to, the relevant questions which they pose to prospective jurors.” Id. at 342.
*624 As to the second factor of concealment, “a juror’s nondisclosure need not be intentional to constitute concealment.” Roberts, 814 So.2d at 343. Thus, this is not a “credibility determination because whether or not [the juror’s] concealment was intentional is of no import.... ” Pereda v. Parajon, 957 So.2d 1194, 1197 (Fla. 3d DCA 2007). In order to establish this element, the party seeking a juror interview must “ ‘demonstrate (among other things) that the voir dire question was straightforward and not reasonably susceptible to misinterpretation.’ ” Rodgers v. After School Programs, Inc., 78 So.3d 42, 45 (Fla. 4th DCA 2012) (quoting Gamsen v. State Farm Fire & Cas. Co., 68 So.3d 290, 294 (Fla. 4th DCA 2011)). A response cannot constitute concealment when “ ‘the juror’s response ... about litigation history is ambiguous, and counsel does not inquire further to clarify that ambiguity.’ ” Id. (quoting Gamsen). Finally, “[i]f the concealment by a juror occurred during voir dire questioning about the juror’s prior experiences with litigation, the identity of the juror as a litigant in a prior legal proceeding must be shown.” Sterling v. Feldbaum, 980 So.2d 596, 599 (Fla. 4th DCA 2008) (citing Beyel Bros., Inc. v. Lemenze, 720 So.2d 556, 557 (Fla. 4th DCA 1998)).
Finally, “[t]he ‘due diligence’ test requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose, particularly if it pertains to an area about which an average lay juror might not otherwise have a working understanding.” Roberts, 814 So.2d at 343. “Thus, resolution of this ‘diligence’ issue requires a factual determination regarding whether the explanations provided by the judge and counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information.” Id.
Although generally post-verdict juror interviews are disfavored, where there is adequate proof that a juror may have failed to disclose material information on voir dire, a party is entitled to conduct an interview of the juror. See Sterling, 980 So.2d at 599. In Sterling, this court reversed the denial of a new trial without a juror interview. This court held:
[W]here the information submitted by appellant was sufficient to show reasonable grounds that the jurors identified in the motion concealed material information during voir dire, the trial court should have granted appellant’s request to interview them. Then, depending upon the outcome of the juror interviews and appellant’s ability to establish that a juror’s nondisclosure of prior litigation history during voir dire is relevant and material to jury service in this case, and not attributable to appellant’s lack of diligence, the court could determine whether appellant is entitled to a new trial. See De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995); Roberts, 814 So.2d at 339-40.
Consistent with Sterling, we hold that the information submitted regarding Juror R.F., as well as a review of the transcript of voir dire and the affidavit of the trial attorney, collectively provided a reasonable ground for a juror interview, particularly in this case where Pagono disputes the connection between the litigation uncovered and the juror. Moreover, the court’s analysis of the De La Rosa factors of materiality, concealment, and due diligence requires the court to weigh all the facts in the case. The court cannot properly assess the requirements when the parties dispute the juror’s involvement in the litigation uncovered in the records search. We thus reverse the denial of new *625 trial and remand for a juror interview and for the court to conduct a hearing on the motion for new trial in compliance with the principles announced in Roberts.
We also distinguish this court’s recent opinion in Duong v. Ziadie, — So.3d -, 2013 WL 614212, 38 Fla. L. Weekly D406 (Fla. 4th DCA Feb. 20, 2013). In that medical malpractice action, two jurors erroneously answered, “No,” to the juror question: “Have you or any members of your immediate family ever been a party to a lawsuit, where you brought suit or suit was brought against you, either civil or criminal?” Id. at-, *1. The two jurors had histories including a criminal welfare fraud conviction, several collection actions, an eviction, and two paternity and child support actions. After the verdict, the appellant’s counsel discovered the litigation history of the two jurors, moved to interview the jurors, and subsequently moved for a new trial. We affirmed the court’s order denying the motion for new trial on the basis that the appellant failed to prove the first prong — materiality—of the De La Rosa test, reasoning that based upon the challenges that were made, together with the lack of questioning of the jurors on the litigation that was disclosed, appellant’s counsel did not demonstrate that his knowledge of their histories would have in all likelihood resulted in the use of a peremptory challenge. In other words, the court could conclude in light of the questioning and peremptory challenges that were exercised, the attorney’s post-verdict insistence that he would have challenged these two jurors was not genuine. This contrasts with the facts here, which showed that Hillsboro’s attorney placed five reasons as to why he would have peremptorily struck Juror R.F. had he been forthcoming. Regardless of these distinctions, Duong highlights the need for an analysis of the totality of the circumstances to determine whether a juror interview or new trial is warranted.
We have seen a growth of post-trial juror interview requests based upon juror non-disclosure of prior litigation information. In Roberts, the court specifically disapproved of the Third District’s holding that public records must be consulted at the time of jury selection or the issue of juror non-disclosure of litigation history would be waived. Roberts, 814 So.2d at 344 (citing the supreme court’s approval in De La Rosa of Judge Baskin’s dissent in Zequeira v. De La Rosa, 627 So.2d 531, 534 (Fla. 3d DCA 1993)). The supreme court did so, because the technology was not present in 2002 to search the public records and pull the files. However, it did suggest that “[wjhere possible, trial judges should allow counsel to check records, if such a request is made, and it can be done without unwarranted delay. Certainly a small delay at the beginning of a trial would be better than having to do a retrial of a case after it has been concluded.” Roberts, 814 So.2d at 345.
Our technology has come a long way in the past ten years since Roberts was decided. All counties now have their official public records online, and court files are also online. A paralegal in the courtroom can most likely search the public records of each juror as the juror is called during voir dire. While such searches are not perfect and would be able to pull records only in the county in which the case is being tried, it could result in catching obvious non-disclosures, such as the case here. The time may have come to rethink how the courts handle juror non-disclosure so as to prevent so much litigation over the issue and so many retrials of cases to the detriment of the entire judicial system.
As we are reversing for reconsideration of the motion for new trial based upon juror interview, which may result in the *626 trial court granting a new trial, for us to address the remaining issues is premature. Thus, our reversal is without prejudice to re-raising these residual issues should the trial court deny a new trial.
CIKLIN and LEVINE, JJ., concur.