May, J.
The defendants in a medical malpractice action seek certiorari review of a.post-trial order granting juror interviews following a defense verdict. The trial court granted the plaintiffs’ motion based on the alleged failure of two jurors to disclose litigation history in their responses to the jury questionnaire. The defendants argue the trial court departed from the essential requirements of the law because the plaintiffs failed to establish the three requirements for granting juror interviews. We agree, grant the petition, and quash the order.
The plaintiffs filed a medical malpractice action against the defendants, alleging a-failure to diagnose their infant son’s skull fracture and brain bleed that were allegedly related to his birth. Their child was delivered with the assistance of a vacuum extraction device. Two weeks after his birth, the child experienced a severe brain bleed. The child underwent a craniotomy, but still suffered permanent brain-related and neurological injuries. The plaintiffs alleged the four defendant' pediatricians should have diagnosed the child’s condition. Following a three-week trial, the jury returned a defense verdict.
The plaintiffs moved to interview three jurors: L.H,, E.T., and the alternate.[1] They alleged L.H, and E.T. failed to disclose their litigation history in responding to the following question on the jury questionnaire.
Have you or any family member ever been sued or have you sued someone else? (This includes suits which were settled after being filed.) If so, please explain.
Jurors L.H. and E.T. both answered “No” to the question. However, public records searches revealed that two individuals with the same names (or similar marital names) had previous encounters with the legal system. Records revealed that L.H. sought to register a restraining order against her ex-husband in California in 2008. The docket characterized the nature of the case as “domestic violence with children.” ■ -
The plaintiffs asserted that thé concealment of that information provided grounds to interview L.H. because “[a] salient, if not dispositive-issue” in their case-was whether the proximate cause of their child’s injury was “child abuse or so-called ‘non-accidental trauma.’ ” The plaintiffs claimed the defendants theorized pre-trial that the child’s injury was caused by abuse. They cited the defense expert’s deposition testimony. They noted the trial court had. ruled in limine that the expert could not testify at trial that the child’s injuries resulted from a drop or knock on the head.
Records also revealed that E.T. was the respondent in numerous “domestic violence” actions. The most recent injunction was entered against E.T. in 2001. And a 2015 stalking case had been dismissed.[2]
■The plaintiffs alleged the alternate “may have significant information with respect to discussions amongst the jurors contrary to this court’s instructions.”
*668 Plaintiffs’ counsel submitted two affidavits, attesting to his public records search, and that the individuals in those records were L.H. and E.T. The affidavits did not state that he would have exercised peremptory strikes on L.H. and E.T. had the information been disclosed.
The plaintiffs also moved for a new trial, arguing juror misconduct, and the verdict was contrary to the weight of the evidence. The defendants responded that the plaintiffs failed to demonstrate entitlement to juror interviews because the alleged non-disclosures were not material, the information had not been concealed, and plaintiffs’ counsel was not diligent in his inquiry during voir dire.
At the hearing on the motion for juror interviews, plaintiffs’ counsel argued he would have used his remaining peremptory challenges on L.H. and E.T. had he known about the jurors’ domestic violence cases— assuming the cases involved a child. The defendants argued the prior litigation was too remote in time and it was not clear that the individuals in those cases were the two jurors. The trial court reserved ruling.
A few weeks later, the trial court granted interviews of jurors L.H. and E.T., but denied an interview of the alternate juror. From this order, the defendants petitioned this court.
The defendants argue the trial court departed from the essential requirements of law by granting the interviews when the plaintiffs failed to demonstrate the three elements necessary to warrant post-trial juror interviews: materiality, concealment, and diligence. See De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla. 1995). The plaintiffs respond that they satisfied all three requirements, and the petition should be denied.
Certiorari has been used to review orders allowing post-trial juror interviews. See, e.g., Naugle v. Philip Morris USA, Inc., 133 So.3d 1235, 1236 n.1 (Fla. 4th DCA 2014); Parra v. Cruz, 59 So.3d 211, 212 (Fla. 3d DCA 2011).
“A party who believes that grounds for legal challenge to a verdict exist may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge.” Fla. R. Civ. P. 1.431(h). Nevertheless, “[pjost-trial juror interviews should be ‘rarely granted and the sanctity of the jury process as well as the privacy rights of the jurors themselves should be closely guarded and protected.’ ” Sterling v. Feldbaum, 980 So.2d 596, 599 (Fla. 4th DCA 2008) (citation omitted). Rule 1.431(h) “is a shield to prevent disgruntled parties and attorneys from harassing jurors after a verdict.” Naugle, 133 So.3d at 1238.
“Although generally post-verdict juror interviews are disfavored, where there is adequate proof that a juror may have failed to disclose material information on voir dire, a party is entitled to conduct an interview of the juror.” Hillsboro Mgmt., LLC v. Pagono, 112 So.3d 620, 624 (Fla. 4th DCA 2013). To be entitled to interview a juror, the movant must satisfy the De La Rosa three-part test. Pembroke Lakes Mall Ltd. v. McGruder, 137 So.3d 418, 427 (Fla. 4th DCA 2014); see also Penalver v. Masomere, 178 So.3d 533, 536 (Fla. 3d DCA 2015) (quashing order granting juror interview where one prong of De La Rosa test was not met).
The three-part test requires proof that:
(1) The concealed information was relevant and material to jury service in the case;
(2) The juror concealed the information during questioning; and
(3) The failure to disclose the information was not attributable to the *669 complaining party’s lack of diligence.
McGruder, 137 So.3d at 427 (emphasis added). The trial court must analyze the “totality of the circumstances to determine whether a juror interview ... is warranted.” Pagono, 112 So.3d at 625.

I. Relevance & Materiality

The plaintiffs needed to show that L.EL’s and E.T.’s prior litigation history was relevant and material to the case. “Nondisclosure is considered material if it is substantial and important so that if the facts were known, [the moving party] may have been influenced to peremptorily challenge the juror from the jury.” Roberts v. Tejada, 814 So.2d 334, 341 (Fla. 2002) (citation omitted).
Assuming the plaintiffs made an initial showing the litigation history belonged to these jurors and that it was material, their counsel’s questioning of prospective jurors undermines that showing. In determining materiality, courts may look to a party’s questioning and acceptance of jurors with litigation histories similar to the challenged jurors. See Duong v. Ziadie, 125 So.3d 225, 228 (Fla. 4th DCA 2013).
Here, it is not clear that the litigation histories belonged to the two jurors. Even so, most of the history was remote, some occurring more than eight years prior, and were not seemingly .related to the subject of the instant case—medical malpractice. It was apparent that plaintiffs’ counsel was not concerned with either prior litigation, in general, or child abuse, in particular, during voir dire, by his questioning of the other jurors.
Out of more than 70 prospective jurors, 17 people answered affirmatively to the litigation history question. Most listed civil actions for money damages such as those arising from personal injuries, car accidents, medical malpractice, and property damage. One listed a foreclosure action. Two answered “Yes” without elaborating on the nature of the litigation.
One prospective juror even noted a domestic violence incident in her family—in response to a different question on the questionnaire—but plaintiffs’ counsel did not ask a single follow-up question concerning that response. Plaintiffs’ counsel asked one prospective juror during voir dire whether she had “been involved in any kind of case or a lawsuit.” That juror answered “No,” both to counsel and in her response on the questionnaire. Thereafter, plaintiffs’ counsel did not question any other prospective juror about prior litigation history, including those who answered ‘Tes” to the question concerning whether they had been sued.
Although L.H. answered “No” to the question, she voluntarily shared her own experience with a vacuum-assisted birth in response to a general question directed at the venire panel. Despite her own experience, L.H. said she would have “no issues” serving as a juror on the case.
Because plaintiffs’ counsel .failed to ask follow-up questions about prior litigation, it is unlikely he would have exercised peremptory strikes against L.H. and E.T. On this record, we conclude “the attorney’s post-verdict insistence that he would have challenged these two jurors was not genuine.” Pagono, 112 So.3d at 625 (citing Duong, 125 So.3d at 228). The plaintiffs failed the relevance and materiality requirement.

2. Concealment

In the second part of the test, the plaintiffs must establish concealment. To constitute concealment, a juror’s nondisclosure need not be intentional. Pagono, 112 So.3d at 624. Instead, concealment ex *670 ists where a juror gives an inaccurate response and “the voir dire question was straightforward and not reasonably susceptible to misinterpretation.” Id. (emphasis added) (quoting Rodgers v. After Sch. Programs, Inc., 78 So.3d 42, 46 (Fla. 4th DCA 2012)).
“A juror’s response to a question cannot constitute concealment ... ‘where the juror’s, response ... about litigation history is ambiguous, and , counsel does not inquire, further to clarify that ambiguity.’ ” Rodgers, 78 So.3d at 45 (quoting Gamsen v. State Farm Fire & Cas. Co., 68 So.3d 290, 294 (Fla. 4th DCA 2011)).
Here, the circumstances indicate that litigation question was not straightforward and was reasonably subject to misinterpretation by prospective jurors. The question asked:
Have you or any family member ever been sued or havé you sued someone else? (This includes suits which were settled after, being filed.) If so, please explain.
(Emphasis added). This question narrowly framed the type of legal activity to which it referred. By its very wording, it excluded criminal, and other legal matters. Indeed, most of the positive responses to the question volunteered information about civil cases involving damages. None of the prospective jurors listed a criminal case, and only one juror mentioned a domestic violence case in response to another question.
The Third District addressed a strikingly similar question in Tricam Indus., Inc. v. Coba, 100 So.3d 105, 112 (Fla. 3d DCA 2012), quashed on other grounds, Coba v. Tricam Indus., Inc., 164 So.3d 637 (Fla. 2015). There, like here, the challenged juror answered a similar litigation history question in the negative despite having litigation history. Id. Given “the context in which the .trial court asked the jurors about their litigation history” and because the responses from the other jurors all concerned personal injury suits, the Third District held, “the jurors may, not have fully understood the nature of the inquiry.” Id. at 112-13.
Similarly, it doe's not appear that plaintiffs’ counsel “squarely asked” L.H. and E.T. about their experience with all legal matters, including domestic violence or child abuse. McGruder, 137 So.3d at 429 (“The concealment prong is met when the juror is ‘squarely asked for’ the information and the juror fails to speak the truth.” (Citation omitted)). This conclusion does not mean, .as plaintiffs contend, that parties will no longer be able to rely on responses to jury questionnaires. What it does mean is that all lawyers will need to be diligent, clear, and precise in questioning prospective jurors concerning their litigation history.
Here, the question was generic and imprecise. “A differently phrased question may well have, resulted in disclosure.” Rodgers, 78 So.3d at 46. The plaintiffs failed to prove concealment given the wording of this question and the lack of follow-up questioning.

3. Due Diligence

The third part of the test for juror interviews is “whether the cause of the failure to elicit the information was due to the fault of the complaining party.” McGruder, 137 So.3d at 429. As discussed above, the plaintiffs did not satisfy the diligence prong because their counsel failed to “ ‘provide a sufficient explanation of the type of information which potential jurors are being asked to disclose.’ ” Pagano, 112 So.3d at 624 (citation omitted). Plaintiffs’ counsel did not articulate to the prospective jurors that the litigation history question sought disclosure of all prior legal matters; or, more specifically, if any *671 of them had been involved in domestic violence or child abuse.
The lack of diligence is even more evident in the delay in researching the litigation history of the prospective jurors. In this case, the plaintiffs had ten days between the conclusion of their voir dire and the start of defendants’ voir dire to run a public records search. The plaintiffs had an additional ¿leven days between the close of evidence and closing argument to conduct the search. Instead, it was not until after the jury returned an unfavorable verdict that plaintiffs undertook their investigation.
While the diligence test does not require counsel to discover the concealed facts prior to the return of a verdict, the Florida Supreme Court has said that counsel should check juror records without delay “[w]here possible.” Roberts, 814 So.2d at 344-45. And, nothing in Roberts prevents consideration' of trial counsel’s failure to run a juror’s litigation history as oné of several factors under a due diligence inquiry. Tricam Indus., 100 So.3d at 114, quashed on other grounds, Coba, 164 So.3d 637 (quashing portion of decision analyzing inconsistent verdict); see also Pagano, 112 So.3d at 625 (suggesting that it was time “to rethink how the courts handle juror non-disclosure,” and suggesting that due to online availability of public records', searches could be conducted during voir dire).
To preserve the continued viability of the right to a jury trial, we reiterate “[p]ost-trial juror interviews should be ‘rarely granted and the sanctity of the jury process as well as the privacy rights of the jurors themselves should be closely guard.ed and protected.’ ” Sterling, 980 So.2d at 599. The plaintiffs were unable to sustain their burden of satisfying.the three-part test of De La Rosa. We therefore grant the petition and quash the order ¡allowing the interview of the two jurors.

Petition granted; order quashed.

Gross and Damoorgian, JJ., concur.

. Initials have been used to protect the names of the jurors.

. Although the plaintiffs discovered other pri- or litigation involving L.H. and E.T., including evictions, traffic tickets, PIP lawsuits, and small claims, in their response they contend only the domestic violence cases are relevant and material to the case,