523 So.2d 193 (1988)
WHARFSIDE TWO, LTD. and Chanen Construction Company, Inc., Appellants,
v.
W.W. GAY MECHANICAL CONTRACTOR, INC., Appellee.
Nos. BQ-394, BQ-397.
District Court of Appeal of Florida, First District.
April 12, 1988.
*194 J. Richard Moore of J. Richard Moore, P.A., Jacksonville, for appellant Wharfside Two, Ltd.
Robert C. Gobelman, P.A., Jack W. Shaw, Jr., P.A., and James P. Wolf of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellant Chanen Const. Co., Inc.
S. Gordon Blalock of Blalock, Holbrook & Akel, P.A., Jacksonville, for appellee.
BOOTH, Judge.
This cause is before us on appeal of a jury verdict awarding appellant Wharfside $30,000 and appellee Gay $200,000, both awards to be paid by appellant Chanen. Appellant contends, inter alia, that the trial court erred in refusing to admit proffered evidence concerning Wharfside's lost profits and that the jury verdict was fatally inconsistent. We agree and must reverse and remand for a new trial on all issues.
The relevant facts are that a group of investors formed Wharfside to build and open a Sheraton Hotel in Jacksonville, Florida. Herman Chanen, a general partner and principal figure in the Wharfside operation, is also the owner of Chanen Construction Company, Inc.[1] Chanen Construction was the general contractor for the Wharfside project, and W.W. Gay Mechanical Contractor, Inc. is the subcontractor Chanen hired to construct the hotel's water system.
Shortly before the hotel opened, observers detected a petroleum-like odor in the hotel's water system. Despite efforts to correct the problem, the odor persisted for as long as three years after the hotel opened. Meanwhile, a new problem developed when the hotel's pipes began to leak. This was eventually corrected by installing a silicate hot water treatment system, but nothing was similarly successful in solving the odor problem. After attempting to solve the problem for one year, appellee Gay announced that its warranty had expired and ceased further efforts. Wharfside had previously paid Chanen $230,000 due to Gay on the subcontract. Chanen withheld the money because it believed Gay was responsible for the leaks and odor. Litigation followed.
During trial, Wharfside attempted to prove that deficiencies in Gay's performance had caused both problems and that the defects significantly reduced the number of guests who stayed at the hotel. This, Wharfside argued, caused a profit loss which it was entitled to recoup as damages. Wharfside introduced into evidence several studies it had commissioned, prior to litigation, to obtain commercial financing for the project. These studies were based on similar hotel operations in Jacksonville and other localities, and were used to persuade lenders to finance the project by showing them the level of profitability Wharfside could expect once it began operation. Although the trial court allowed Wharfside to enter the studies into evidence, it refused to allow expert testimony comparing projected occupancy rates with those actually realized in order to show how much profit was lost. If permitted, Wharfside's witness would have testified that Wharfside lost profits of approximately one million dollars from 1981 to 1983. The trial court also refused to allow testimony by a Wharfside employee who had worked in managerial positions at six different Sheratons around the country and had helped open and manage the Jacksonville Sheraton in 1981 and 1984. The employee would have testified that the odor problem caused guests to stay away and *195 that there were so many complaints about the water that the hotel began a separate log to record them.
Following a nine-day trial, the jury returned a verdict after one hour and eighteen minutes of deliberations on a Friday afternoon. Because a special verdict form was used, the jury had to make findings on a number of issues. It found that Gay was not liable to Wharfside and Chanen for breach of contract or negligence in performing its subcontract but that Chanen was liable to Wharfside for $30,000. It also found Chanen liable to Gay for $200,000, $30,000 less than the amount Chanen withheld from Gay. The parties had stipulated that Chanen could not be liable to Wharfside unless Gay was, because Chanen's only liability was derivative based on its status as general contractor employing subcontractor Gay. By finding Gay not liable, but ordering Chanen to pay Wharfside $30,000, the jury's verdict was inconsistent.
The trial court refused to allow the testimony on lost profits on the ground that it was too speculative. In so holding, the court relied on the long-standing Florida rule that recovery of prospective lost profits requires an existing business. Where a business is new and has no earnings "track record," Florida courts have generally found that allowing a jury to award lost profits would be entirely speculative. See Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA 1975); Daytona Migi of Jacksonville, Inc. v. Daytona Automotive Fiberglass, Inc., 388 So.2d 228 (Fla. 5th DCA 1980); Innkeepers International, Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1975); Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1984), review dismissed, 451 So.2d 848 (Fla. 1984). However, the rule is not ironclad. In Massey-Ferguson, Inc. v. Santa Rosa Tractor Company, 415 So.2d 865 (Fla. 1st DCA 1982), this court held:
The general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss [citation omitted], but the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed. Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936). "The requisite to their allowance is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained." 166 So. at 217.
See also G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526 (11th Cir.1985). In Resorts International, Inc. v. Charter Air Center, Inc., 503 So.2d 1293 (Fla. 3d DCA 1987), the Third District allowed lost profits where the new enterprise had a contract calling for a specified amount of regular business and the contract was breached, on the ground that the contract could be used as a certain measure of profits. On the other hand, the Second District refused to allow evidence of lost profits which were to be shown by comparison with profits from existing, similar businesses in Wash-Bowl, Inc. v. Wroton, 432 So.2d 766 (Fla. 2d DCA 1983).
We find that under the facts of this case, the proffered evidence was not so speculative as to require its exclusion. The studies the trial court admitted, which were prepared prior to litigation by reputable economic analysts, provided a sufficient standard to support the proffered testimony. It is undisputed that these studies were considered sufficiently reliable within the hotel and banking fields to justify consummating a multi-million-dollar arrangement for financing the prospective hotel. This evidence is sufficiently reliable to support a jury's consideration of the claim for loss of prospective profits.
Although the above holding makes it largely unnecessary to discuss the questions raised regarding the verdict, we also hold that the verdict was sufficiently flawed to require retrial. It is apparent from the record that the jury could not have found Chanen liable to Wharfside without first finding Gay liable, but that is what it did. Appellee argues that the jury was compensating Wharfside for replacing the hot water system and simply ordered *196 Chanen to pay $30,000 of the money it was holding for Gay to Wharfside, instead of ordering Chanen to pay it to Gay first and then ordering it paid to Wharfside. This argument requires we ignore the jury's plain finding that Gay was not liable but Chanen was. Further, the jury award was not the same as the total cost of repairing the water system. Consequently, the basis of the award is uncertain. Because the verdict contains inconsistency which fundamentally undermines its underlying basis,[2] we reverse and remand for a new trial on this ground as well.
REVERSED and REMANDED.
ZEHMER and WIGGINTON, JJ., concur.
NOTES
[1] No issue was made below or in this court concerning Mr. Chanen's involvement with these two corporations.
[2] See North American Catamaran Racing Association, Inc. v. McCollister, 480 So.2d 669 (Fla. 5th DCA 1985).