# Supreme Court of Florida

_____

No. SC12-2624
_____

**DIANA COBA, etc.,**
Petitioner,

vs.

**TRICAM INDUSTRIES, INC., et al.,**
Respondents.

[May 14, 2015]

PARIENTE, J.

When a jury in a civil case returns with an inconsistent verdict and a party does not object before the jury is discharged, the well-established law has been that the party waives any objections to the inconsistent verdict. The conflict issue presented in this case is whether, in products liability cases, there is a "fundamental nature" exception to this general rule—that is, an exception that does not require a party to immediately object to an inconsistent verdict—where the jury finds that the defendant was negligent in the design of the product but also finds that the product did not contain a design defect.

The decision of the Third District Court of Appeal in Tricam Industries, Inc. v. Coba, 100 So. 3d 105 (Fla. 3d DCA 2012), applied the "fundamental nature" exception, which was previously recognized by the Fourth District Court of Appeal in Nissan Motor Co. v. Alvarez, 891 So. 2d 4, 8 (Fla. 4th DCA 2004), and the Fifth District Court of Appeal in North American Catamaran Racing Ass'n (NACRA) v. McCollister, 480 So. 2d 669, 671 (Fla. 5th DCA 1985). Application of the "fundamental nature" exception, however, is in express and direct conflict with a line of cases that require a party to object to an inconsistent verdict prior to the discharge of the jury and that require a jury, rather than an appellate court, to resolve an inconsistent verdict. See, e.g., Cocca v. Smith, 821 So. 2d 328, 330-31 (Fla. 2d DCA 2002); Gup v. Cook, 549 So. 2d 1081, 1083-84 (Fla. 1st DCA 1989). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

Consistent with our long-standing precedent, we hold that a party must timely object to an inconsistent verdict under these circumstances or the issue is waived. Thus, we reject the reasoning of the Third District majority and agree with Judge Schwartz's dissent that there is no "fundamental nature" exception to the inconsistent verdict law in a civil case that applies only to products liability cases, because there is "no conceptual or reasoned basis for the distinction and no cognizable way to apply it." Tricam Indus., 100 So. 3d at 115 (Schwartz, J., dissenting).

In applying this exception in this case, the Third District improperly disregarded the jury's determination of liability in favor of the plaintiffs and directed the trial court to enter judgment in favor of the party that failed to raise the inconsistent verdict issue before the jury was discharged. This holding also conflicts with well-established law, which requires a jury—not a court—to resolve the inconsistency.

We accordingly quash <u>Tricam Industries</u> and disapprove of <u>Nissan Motor</u> and <u>NACRA</u>. Because the defendants, Tricam Industries and Home Depot, failed to timely raise their objection to the jury's inconsistent verdict, the trial court did not err in denying the defendants' motion to set aside the verdict, and thus the trial court's judgment should be reinstated.

## FACTS

This case stems from a tragic accident in which Roberto Coba fell from a thirteen-foot aluminum ladder, resulting in his death. Diana Coba, as the personal representative of Roberto Coba's estate, filed an action against Tricam Industries, which manufactured the ladder involved in the accident, and against Home Depot, which sold the ladder. In the complaint, Coba alleged that both Tricam Industries and Home Depot were liable on the basis of strict liability because they designed, manufactured, marketed, distributed, or sold a ladder in a defective and dangerous condition. The complaint further alleged that the defendants were also liable under

negligence theories because they had a duty to use reasonable care to market, sell, and distribute the ladder in a reasonably safe condition.

At trial, Coba presented testimony from the decedent's daughter and stepson, both of whom were present when the accident occurred. Coba also presented evidence as to whether the ladder had a design defect—evidence that was disputed. As summarized by the Third District:

> [T]he plaintiff's expert, Dr. Farhad Booeshaghi, a consulting engineer and accident reconstructionist, testified that the ladder was defectively designed because it was capable of falsely appearing to be in a locked position since the pins in the "J locks," which attached to the ladder's outer rails, "click[ed]" as if they were locked even when they were not. He explained that when that occurred, the ladder was capable of temporarily holding a person's weight, giving the user a false sense of security. Dr. Booeshaghi opined that at the time of the accident, the ladder was in such a "false lock" position, and the false-lock-failure, combined with the decedent's weight, caused the ladder to "telescope" at full extension, impelling the ladder forward and launching the decedent backward. He also opined that the inclusion of an additional crossbar would have increased the structural rigidity of the ladder and prevented the ladder from telescoping. Lastly, he testified that the accident would not have occurred had the locks been properly locked, and that it was ultimately the decedent's responsibility to properly lock the ladder.
> Conversely, the defendants' expert, Mr. Jon Ver Halen, a consulting engineer, testified that the ladder was not defectively designed. He opined that it was impossible for a "false lock" to occur on an articulating ladder, and explained that, given the "factor of safety" built into the ladder's "load factor," it could not have structurally failed when used in its intended manner. In addition, Mr. Ver Halen explained that, based on the ladder's length and likely position against the house, and the location and types of marks and deformations left on the wall, floor, and ladder, the accident could not have been caused by the telescoping process described by Dr. Booeshaghi. Instead, according to Mr. Ver Halen, the physical

- 4 -

evidence suggested that the ladder was set up on a "relatively slippery" surface, enabling the ladder to slide as the decedent climbed it, and ultimately giving way, causing the decedent to fall.

Tricam Indus., 100 So. 3d at 107 (footnote omitted).

Although Coba had initially also claimed that the warnings on the ladder were defective, she later withdrew that claim. The jury was instructed as to the standard for finding a design defect under strict liability and the standard for finding negligence on the basis of design, distribution, and sale of the ladder. Specifically, the jury instructions on these two issues read:

> Plaintiff claims that Defendants, Tricam Industries and Home Depot, were negligent in the design, distribution, and sale of its Tricam ladder, which caused the death of Roberto Coba.
> Plaintiff also claims that regardless whether Tricam Industries and Home Depot were negligent or not, it is strictly liable because it placed a ladder on the market in a defective condition, unreasonably dangerous to the user, and that the defect was the cause of Roberto Coba's death.
> Defendants, Tricam Industries and Home Depot, deny those claims, and also claim that Roberto Coba was himself negligent in his use of the ladder, which caused his death.
> The parties must prove their claims by the greater weight of the evidence.

As to negligence, the trial court gave the standard jury instruction at that time:

> Negligence is the failure to use reasonable care, which is the care that a reasonably careful person would use under like circumstances. Negligence is doing something that a reasonably careful person would not do under like circumstances, or failing to do something that a reasonably careful person would do under like circumstances.

The trial court then explained the claim of strict liability as follows:

A product is defective if by reason of its design the product is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting its condition. A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer.

The trial court also provided the jury with special interrogatories, without objection from either side, in which the question of design defect preceded the question of negligence, and the jury returned the following verdict as to liability issues:

1. Did Defendants, Tricam Industries and/or Home Depot, place the ladder on the market with a design defect, which was a legal cause of Roberto Coba's death?

YES _____ NO ___X___

2. Was there negligence on the part of Defendants, Tricam Industries and/or Home Depot, which was a legal cause of Roberto Coba's death?

YES ___X___ NO _____

Following the special interrogatories, the jury verdict form directed the jury: "If your answer to either or both Question 1 and 2 is 'YES', please continue to answer the remaining questions," at which point the verdict form asked whether the decedent was at fault and to apportion fault. The jury made the following findings:

3. Was there negligence on the part of the decedent, Roberto Coba, which was a legal cause of his death?

- 6 -

YES \_\_\_X\_\_\_  NO _____

4.  Please state the percentage of fault you charge to:

Defendant, Tricam [&]

Defendant, Home Depot                      \_\_20%\_\_

Roberto Coba, decedent                       \_\_80%\_\_

As to the award of damages, the jury awarded no damages to the estate for medical and funeral expenses, awarded $70,000 to Coba's daughter for the loss of her father's support and services, and awarded $1,500,000 to Coba's daughter for the loss of parental companionship and for pain and suffering as a result of the death of her father.  After the verdict was read, neither party objected to the verdict.  The jury was then discharged.

The defendants subsequently filed a motion to set aside the verdict, asserting that the jury verdict was fundamentally inconsistent because there could be no finding of a negligent design without finding that a design defect contributed to the fall, and the jury determined that there was no defect.  In response, Coba asserted that the inconsistent verdict claim was waived since the defendants failed to raise this claim before the jury was discharged.  Alternatively, Coba stated that if the trial court "should see fit to relieve the Defendants of their burden to object to an inconsistent verdict before the discharge of the jury, the remedy that should be granted is not a judgment notwithstanding the verdict.  Instead, the only proper

remedy would be a new trial on all liability issues." The trial court denied the defendants' motion to set aside the verdict.

Coba also filed a post-trial motion, asserting that she was entitled to a new trial on various grounds, including that the amount of the verdict was legally insufficient since it failed to award the undisputed amounts of the decedent's medical expenses and funeral bills. The trial court denied Coba's motion for a new trial, except for the portion alleging an inadequate verdict as to the undisputed medical expenses, and increased the jury's verdict to include an award of medical expenses in the amount of $179,739. After reducing the total amount of damages based on the percentage of fault attributed to the decedent (80%), the trial court entered judgment for Coba in the amount of $349,947.80. Both parties appealed.

As to the conflict issue before this Court pertaining to the inconsistent verdict, the Third District disagreed with the trial court's decision to deny the defendants' motion to set aside the verdict, despite their failure to timely object. In reaching this decision, the Third District first recognized that, generally, a party must object if that party believes that a verdict is inconsistent; otherwise, that objection is waived. Tricam Indus., 100 So. 3d at 108-09. However, after reviewing decisions in other products liability design cases, the Third District held that a party does not waive a challenge to an inconsistent jury verdict by failing to object prior to the discharge of the jury so long as the inconsistency is of a

- 8 -

"fundamental nature." Id. at 111. As applied in this case, the Third District determined that the jury's inconsistent verdict was of a "fundamental nature" because in one portion of the jury's verdict, the jury found that there was no design defect, but in another portion, the jury found that the defendants were negligent—a claim that was predicated on finding a design defect. Id.

The Third District then determined that the trial court should have entered judgment in favor of the defendants, explaining that "the only evidence offered against the defendants related to a purported design defect, and the jury specifically found there was no design defect. Because there was no evidence to support any other cause of action, there remains no issue to be resolved on remand." Id. The Third District did not, however, explain how it could determine which of the conflicting findings in the jury's verdict represented the jury's actual intent.

Judge Schwartz dissented with regard to the treatment of the "fundamental nature" exception. As Judge Schwartz explained, in his view, the defendants waived this issue by not raising it after the jury returned an inconsistent verdict, and that even if this were not the case, the appropriate remedy would be a new trial:

> a) The [defendants] waived the right to complain of any inconsistent verdict because of [their] failure to request that the conflict be resolved by the jury after its allegedly flawed verdict was returned.
> b) Even if this were not so, the appropriate remedy is not, as the majority does, simply to resolve the conflict in favor of

[defendants] but a new trial so that a jury and not the court may decide the question.

Id. at 114 (Schwartz, J., dissenting).

While Judge Schwartz recognized that the majority had adopted the "fundamental nature" exception previously recognized by the Fourth District and the Fifth District, Judge Schwartz questioned the validity of this exception, stating, "The simple comeback is that there is no conceptual or reasoned basis for the distinction and no cognizable way to apply it." Id. at 115. Judge Schwartz also disagreed that a court could resolve an acknowledged inconsistent verdict on its own, much less resolve the inconsistency in favor of the party who failed to object and in a manner contrary to the verdict itself. Id. at 116-17.

## ANALYSIS

The conflict issue before this Court is whether there is a "fundamental nature" exception to the general jurisprudence recognized in a long line of cases that require parties to object to an inconsistent verdict prior to the discharge of the jury and that require a jury—rather than a court—to resolve an inconsistent verdict when that issue was timely raised. We begin by discussing the general obligations imposed on parties when a jury's verdict is inconsistent, the purpose of requiring an immediate objection, and the appropriate relief that is necessary when a party timely objects to an inconsistent verdict. We then examine the origin of the "fundamental nature" exception and how the courts that adopted this exception

- 10 -

have resolved an inconsistent verdict. Finally, we conclude that a timely objection is required for all inconsistent verdicts and apply our holding to this case.

## I. General Law Pertaining to Inconsistent Jury Verdicts

A jury's verdict in a civil case is generally "clothed with a presumption of regularity." Republic Servs. of Fla., L.P. v. Poucher, 851 So. 2d 866, 869 (Fla. 1st DCA 2003). Thus, "an appellate court will not disturb a final judgment if there is competent, substantial evidence to support the verdict on which the judgment rests." Berges v. Infinity Ins. Co., 896 So. 2d 665, 675-76 (Fla. 2004). In fact, an appellate court is not authorized to substitute its judgment for that of the jury. Id. at 676. This Court has long held that if no objection to the verdict is made by either party, any defect to the form of the verdict is waived. See Higbee v. Dorigo, 66 So. 2d 684, 685 (Fla. 1953).

Courts have distinguished cases involving inadequate verdicts from those that are characterized as inconsistent. A verdict is not necessarily inconsistent simply because it fails to award enough money or even no money at all. In those circumstances, "the issue is the adequacy of the award, not its consistency with any other award by the verdict." Deklyen v. Truckers World, Inc., 867 So. 2d 1264, 1266 (Fla. 5th DCA 2004) (quoting Avakian v. Burger King Corp., 719 So. 2d 342, 344 (Fla. 4th DCA 1998)). An objection to the inadequacy or excessiveness of a verdict can be raised in a motion for a new trial without requiring a party to

- 11 -

object prior to the jury's discharge. Progressive Select Ins. Co. v. Lorenzo, 49 So. 3d 272, 277 (Fla. 4th DCA 2010); Causeway Vista, Inc. v. State, Dep't of Transp., 918 So. 2d 352, 355 (Fla. 2d DCA 2005).

On the other hand, an inconsistent verdict is defined as when two definite findings of fact material to the judgment are mutually exclusive. See Smith v. Fla. Healthy Kids Corp., 27 So. 3d 692, 695 (Fla. 4th DCA 2010); Alvarez v. Rendon, 953 So. 2d 702, 710 (Fla. 5th DCA 2007). "Where the findings of a jury's verdict in two or more respects are findings with respect to a definite fact material to the judgment such that both cannot be true and therefore stand at the same time, they are in fatal conflict." Smith, 27 So. 3d at 695 (quoting Crawford v. DiMicco, 216 So. 2d 769, 771 (Fla. 4th DCA 1968)). "To preserve the issue of an inconsistent verdict, the party claiming inconsistency must raise the issue before the jury is discharged and ask the trial court to reinstruct the jury and send it back for further deliberations." Ellender v. Bricker, 967 So. 2d 1088, 1091 (Fla. 2d DCA 2007) (quoting Cocca, 821 So. 2d at 330).

Each of Florida's five district courts of appeal has long recognized the general rule that a party must object to an inconsistent jury verdict before the jury is discharged. See, e.g., Nationwide Mut. Fire Ins. Co. v. Harrell, 53 So. 3d 1084, 1088 (Fla. 1st DCA 2010) ("To preserve the issue of an inconsistent verdict, the party claiming inconsistency must raise the issue before the jury is discharged.");

Ellender, 967 So. 2d at 1091 ("To preserve the issue of an inconsistent verdict, the party claiming inconsistency must raise the issue before the jury is discharged and ask the trial court to reinstruct the jury and send it back for further deliberations." (quoting Cocca, 821 So. 2d at 330)); J.T.A. Factors, Inc. v. Philcon Servs., Inc., 820 So. 2d 367, 371 (Fla. 3d DCA 2002) ("A contention that a jury verdict is inconsistent must be raised at the time the verdict is read and before the jury is released in order to allow an opportunity to cure."); Progressive Select Ins. Co., 49 So. 3d at 277 ("Consistent with common law and its evolution throughout Florida case law, a jury verdict which is truly inconsistent requires an objection prior to the discharge of the jury." (footnote omitted)); Simpson v. Stone, 662 So. 2d 959, 961 (Fla. 5th DCA 1995) ("It has long been the general rule that a party is obligated to object to an inconsistent verdict prior to discharge of the jury."). Further, the appellate courts have been uniform in enunciating the principle that if a party fails to timely object, the issue is waived. If a party timely objects to an inconsistent verdict and the trial court erroneously denies the objection and discharges the jury, the correct remedy is to grant a new trial.

The reasons for requiring an immediate objection are numerous. First, by requiring parties to object as soon as they are aware of the verdict, the jury is still available to correct the error. Moorman v. Am. Safety Equip., 594 So. 2d 795, 799 (Fla. 4th DCA 1992) ("It is quite basic that objections as to the form of the verdict

- 13 -

or to inconsistent verdicts must be made while the jury is still available to correct them.").

Second, by requiring this type of objection to be voiced prior to a jury's discharge, it prevents a party from strategically sitting on the objection until after the jury is no longer available to correct its decision.  As numerous courts have observed, permitting later challenges would encourage parties to not timely object "as a conscious choice of strategy" since the complaining party may risk having the award unfavorably adjusted.  See C.G. Chase Constr. Co. v. Colon, 725 So. 2d 1144, 1145 (Fla. 3d DCA 1998); Keller Indus., Inc. v. Morgart, 412 So. 2d 950, 951 (Fla. 5th DCA 1982) ("For all we know, defendant's trial counsel intentionally, for tactical reasons, chose not to bring the problem to the court's attention.").

Third, mandating parties to immediately object preserves limited judicial resources, since it permits the error to be rectified during the initial trial and reduces the likelihood that a second trial would become necessary.  See Moorman, 594 So. 2d at 799 ("[T]he societal interest in furnishing only a single occasion for the trial of civil disputes would be entirely undone by the granting of second trials for reasons which could have been addressed at the first.").

Finally, requiring an objection at the time the jury can still correct its error maintains the strong deference that the judicial system places on a jury's verdict.

- 14 -

In fact, it is for this reason that in cases where a trial court erroneously denies a timely challenge to an inconsistent verdict, the proper remedy is a new trial, rather than entry of judgment in favor of the objecting party. As was recognized by the Fourth District in <u>Moorman</u>, "the importance of the right to trial by jury implicates a strong deference to a jury's decision, requiring that its verdict be sustained if at all possible." <u>Id.</u> In light of these principles, we now review the decisions applying the "fundamental nature" exception in products liability cases and the basis underlying this exception.

## II. Whether There is a "Fundamental Nature" Exception to An Inconsistent Verdict for Products Liability Design Cases

The law surrounding inconsistent verdicts is twofold: (1) the objecting party must bring an inconsistent verdict to the trial court's attention before the jury is discharged or the issue is waived; and (2) if the inconsistent verdict is not resolved by the jury, a new trial is required. However, in <u>Tricam Industries</u>, <u>NACRA</u>, and <u>Nissan Motor</u>, the district courts enunciated a "fundamental nature" exception in products liability cases and then, instead of ordering a new trial, entered judgment in favor of the non-objecting party by elevating one jury finding (that there was no design defect) over the other jury finding (that there was negligence in the design that was a legal cause of injury or death).

Specifically, in the decision which first created this exception, <u>NACRA</u>, the plaintiff brought an action against a boat manufacturer on the basis of strict

liability and negligence, alleging that the defendant was negligent in designing a catamaran.  NACRA, 480 So. 2d at 670.  The jury found that the catamaran was not defective, but held that the defendant was negligent.  Id. at 670-71.  The defendant did not object to the verdict before the jury was discharged.  Id. at 671.  However, in a later motion for judgment notwithstanding the verdict, the defendant asserted that the verdict was inconsistent and required a new trial.  Id. at 671 n.2.

The Fifth District recognized that while generally a party must object to an inconsistent verdict before the jury is discharged in order to preserve the claim, this rule did not apply to this specific situation because the inconsistency was of a "fundamental nature," where the jury explicitly held that there was no design defect.  Id. at 671.  Accordingly, the court reversed the judgment and remanded for entry of judgment in the defendant's favor.  Id.

However, the two cases relied upon in NACRA to establish the "fundamental nature" exception actually stand for the opposite holding and stress that a party must timely object to any error pertaining to the verdict or the argument is waived.  See Robbins v. Graham, 404 So. 2d 769, 771 (Fla. 4th DCA 1981) ("Objections to the form of the verdict, under these facts, must be timely made and failure to object resulted in a waiver by appellee."); Papcun v. Piggy Bag Disc. Souvenirs, Food & Gas Corp., 472 So. 2d 880, 881 (Fla. 5th DCA 1985) ("It is well established that a failure to object to a verdict form regarding defects not of

a constitutional or fundamental character constitutes a waiver of such defects.").

Even the Fourth District itself has seemed perplexed as to <u>NACRA</u>'s reliance on its

opinion in <u>Robbins</u> for the "fundamental nature" exception. <u>See</u> <u>Moorman</u>, 594

So. 2d at 799 ("Curiously, the court cites our <u>Robbins</u> decision for this proposition,

but there is really nothing in it to support the citation."). When <u>Nissan Motor</u> later

adopted the "fundamental nature" exception in 2004, the court simply relied on the

holding in <u>NACRA</u> and failed to define the parameters of this exception. <u>See</u>

<u>Nissan Motor</u>, 891 So. 2d at 8.

Beyond its lack of support in caselaw, there are numerous problems with the

so-called "fundamental nature" exception in general. First, the "fundamental

nature" exception is at odds with the general principles that govern inconsistent

verdicts and the judicial policy reasons undergirding the requirement of a timely

objection, including upholding the sanctity of the jury's role in a trial, preventing

strategic gamesmanship, and increasing judicial efficiency.

Second, an inconsistent verdict does not mean that there was no evidence to

support one finding over another finding. If that were the case, the proper

procedure would have been a motion for judgment notwithstanding the verdict.

Specifically, a JNOV motion alleges that <u>the evidence</u> was insufficient to

support the verdict at all. When a court is faced with a motion for a JNOV, the

court must view all facts and reasonable inferences "in favor of the verdict." <u>Irven</u>

- 17 -

v. Dep't of Health & Rehab. Servs., 790 So. 2d 403, 406-07 (Fla. 2001). "A motion for directed verdict or JNOV should be granted only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party." New Jerusalem Church of God, Inc. v. Sneads Cmty. Church, Inc., 147 So. 3d 25, 28 (Fla. 1st DCA 2013) (emphasis added) (quoting Lindon v. Dalton Hotel Corp., 49 So. 3d 299, 303 (Fla. 5th DCA 2010)). This standard preserves the sanctity of the verdict itself by resolving all doubts in favor of the verdict. In contrast, the "fundamental nature" exception rests on the verdict itself—i.e., although sufficient evidence was presented to permit the jury to determine the factual issues, one portion of the verdict conflicts with another portion of the verdict. One cannot resolve this conflict "in favor of the verdict" because the verdict itself is the problem.

Third, the "fundamental nature" exception is at odds with the extremely limited use of "fundamental" errors as specifically applied in civil cases. In contrast to criminal cases where the "fundamental error" doctrine is utilized, in civil cases, reversal based on the concept of "fundamental error" where a timely objection has not been made is exceedingly rare. This Court has gone so far as to explain that fundamental error must implicate a constitutional right, such as due process, or the error must be so significant that requiring a new trial is essential to

- 18 -

maintain public trust in our jury trial system. See, e.g., Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1026 (Fla. 2000). In other words, the error must have been so significant that it deprived one party of the right to a fair trial and due process. Such a circumstance is not before the court where the jury reached a verdict and determined damages, even if its findings could be termed inconsistent as to the basis for its liability determination but there was evidence to support the jury's findings. The parties have an opportunity to object to an inconsistent verdict if they choose to do so.

Fourth, the parameters of the exception are difficult, if not impossible, to define. Despite the enunciation of this "fundamental nature" exception in products liability cases, there is no conceptual legal basis to distinguish those cases from other cases in which the jury verdict was equally inconsistent but the exception did not apply.

Specifically, a review of multiple inconsistent verdict cases demonstrates that district courts have not consistently utilized the "fundamental nature" exception, even where one portion of the verdict absolutely precluded the finding that a jury made in another portion of its verdict. For example, in Wharfside Two, Ltd. v. W.W. Gay Mechanical Contractor, Inc., 523 So. 2d 193 (Fla. 1st DCA 1988), the investors in a hotel brought a lawsuit against Chanen Construction Company, which was the general contractor, and Gay Mechanical Contractor, the

- 19 -

subcontractor that constructed the hotel's water system. As the only problem involved the water system installed by Gay, Chanen's liability was completely derivative based on its status as the general contractor who employed subcontractor Gay; no other basis of liability against Chanen existed. Id. at 195. Yet, the jury returned a verdict that found Chanen liable to Wharfside, but found Gay not liable. Id. Chanen asserted that the verdict was fatally inconsistent. Id. at 194.

The First District agreed that "the verdict contains [an] inconsistency which <u>fundamentally undermines its underlying basis</u>." Id. at 196 (emphasis added). Despite making that observation, however, the First District did not apply the "fundamental nature" exception that would require judgment to be entered in favor of Chanen, as no independent basis existed for its liability in light of the finding that Gay was not liable. Instead, because the jury was not provided with the opportunity to correct its inconsistent verdict, the case was remanded for a new trial. This Court approved the First District's holding on that basis, stating, "[t]he district court's discussion of verdict inconsistency fully addresses that issue." <u>W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.</u>, 545 So. 2d 1348, 1351 (Fla. 1989).

Other courts have reached similar conclusions in other inconsistent verdict cases that do not involve products liability claims, including even cases from the Third and Fifth Districts where the "fundamental nature" exception has been

- 20 -

recognized for products liability cases. In <u>First Sealord Surety, Inc. v. Suffolk Construction Co.</u>, 995 So. 2d 609, 610 (Fla. 3d DCA 2008), the Third District did not apply the "fundamental nature" exception to an inconsistent verdict where the jury held that a principal was not liable and the surety was liable, despite the fact that the surety's liability cannot be greater than the principal's liability. Instead, the Third District held that if a party fails to raise a claim that a verdict is inconsistent, that issue has been waived. <u>See</u> <u>id.</u> at 611; <u>see also</u> <u>Sunbank & Trust Co. of Brooksville v. Transcon. Ins. Co.</u>, 666 So. 2d 198, 199 (Fla. 5th DCA 1995) (not applying the "fundamental nature" exception to a "fatally" inconsistent verdict where the jury found that one of the defendants was not negligent and then determined that defendant's percentage of negligence to be twenty percent).

There is no other specific reason to apply a "fundamental nature" exception unique to products liability cases. While the defendants assert that products liability law dictates a different result, we have found no case that would require products liability cases to be treated in a different manner than other cases involving equally inconsistent verdicts.[1]

_____

1. The cases mentioned in oral argument by the defendants do not support the argument that products liability law requires this "fundamental nature" exception. <u>See</u> <u>Auburn Mach. Works Co., Inc. v. Jones</u>, 366 So. 2d 1167, 1172 (Fla. 1979); <u>West v. Caterpillar Tractor Co., Inc.</u>, 336 So. 2d 80, 92 (Fla. 1976); <u>Cassisi v. Maytag Co.</u>, 396 So. 2d 1140, 1144 (Fla. 1st DCA 1981); <u>Royal v. Black & Decker Mfg. Co.</u>, 205 So. 2d 307, 310 (Fla. 3d DCA 1967). These cases set forth the general principles addressing products liability claims and do not pertain

- 21 -

To the contrary, there may be a reason why juries in products liability cases have arrived at inconsistent verdicts.  For example, in reaching its findings, the jury may have been confused about the jury instructions defining strict liability or may have believed, based on the instructions, that all it needed to do to hold the defendant liable was find either a design defect or negligent design.[2]  The standard products liability jury instructions specifically direct that the jury should consider comparative negligence and damages if the jury finds either a design defect or negligent design.  Yet, the possibility of juror confusion regarding the instructions

to inconsistent jury verdicts at all.  See Auburn Mach. Works Co., 366 So. 2d at 1172 (holding that in products liability cases, the obviousness of a hazard is not an exception to a manufacturer's liability, but is a defense that a manufacturer can use to show a plaintiff did not exercise reasonable care based on the openness and obviousness of the danger); West, 336 So. 2d at 92 (holding that a manufacturer may be held liable under the theory of strict liability in tort where the manufacturer places a product on the market with a defect that causes an injury but, as a defense, the manufacturer can assert contributory negligence if based upon grounds other than a failure of the user to discover a defect in the product); Cassisi, 396 So. 2d at 1152 n.26 (same); Royal, 205 So. 2d at 310 (holding that a manufacturer does not breach its duty when it has supplied materials that are reasonably safe, even though the materials might conceivably be made more safe).

2.  The possibility of an inconsistent verdict in this type of case, where both theories are presented to the jury, is actually referred to in the comments of Florida's Standard Jury Instructions—Product Liability: "In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict."  Standard Jury Instructions—Civil Cases (No. 02-2), 872 So. 2d 893, 896 (Fla. 2004).  This comment has remained unchanged in our recent opinion in In re Standard Jury Instructions in Civil Cases—Report No. 13-01 (Products Liab.), No. SC13-683, 2015 WL 1400770, at *6 (Fla. Mar. 26, 2015).

or the special verdicts is exactly what is recognized as the core of all inconsistent verdict cases.

In inconsistent verdict cases outside of the products liability context, if there has been no objection to the inconsistent verdict, appellate courts have held that any error in the inconsistent verdict is waived. In contrast, in this situation, the district courts in Tricam Industries, NACRA, and Nissan Motor erroneously determined that one portion of the inconsistent verdict represented an established fact that the jury found and then examined the evidence presented at trial to determine whether an independent basis existed for the conflicting verdict. By elevating one of the findings over the other inconsistent finding, the appellate courts failed to view all of the facts "in favor of the verdict." Thus, the "fundamental nature" exception has been applied in a contrary manner to the general legal principles discussed above. There is no principled basis for distinguishing products liability cases when it comes to inconsistent verdicts.

In conclusion, we reject a products liability "fundamental nature" exception that obviates the need for an objection before the jury is discharged. Any inconsistency in a verdict must be resolved by a jury—not a court attempting to guess the jury's intent. Thus, we further reject the Third District's determination, as well as the conclusions reached in NACRA and Nissan Motor, that the proper remedy in such a situation would be for a court to enter a judgment for the defense,

which is contrary to the jury's award of damages. Even in cases where there is a timely objection, if the jury is unable to resolve the inconsistency after being reinstructed, or if the trial court fails to re-submit the case to the jury, the remedy is not to enter a judgment but to order a new trial so a new jury can make the necessary findings to resolve the case. See, e.g., Southland Corp. v. Crane, 699 So. 2d 332, 334 (Fla. 5th DCA 1997) (requiring a new trial where the court discharged the jury after the objection to an inconsistent verdict).

In cases where no objection is raised, the remedy is certainly not to enter judgment in favor of a party who failed to timely object. This is especially true where the judgment is entered in a manner contrary to the jury's ultimate resolution, thus rewarding the non-objecting party for strategically remaining silent with the hope that a court will resolve the inconsistency in its favor. We therefore agree with Judge Schwartz's dissent below that "it is simply wrong for the court either here or in NACRA and [Nissan Motor], to resolve the acknowledged inconsistency itself, much less to do so in favor of the loser." Tricam Indus., 100 So. 3d at 116-17 (Schwartz, J., dissenting).

### III. Application of the Law to this Case

In this case, the jury received standard jury instructions on both negligence and strict liability contained in the approved standard jury instructions. The special interrogatory then instructed the jury to consider damages if its answer to either the

- 24 -

first question (design defect) or the second question (negligent design) was "yes." While the jury received standard jury instructions pertaining to products liability, it is certainly plausible that the jury was confused about the significance of its findings as to design defect under strict liability and negligent design. The jury could have determined that it needed only to return a verdict in favor of the plaintiff on one theory before proceeding to determine damages. Certainly, this is a logical explanation given that the jury also found that the decedent contributed to cause the accident, by finding the decedent 80% negligent, and then proceeded to award substantial damages for the losses sustained by the surviving daughter.

Although the defendants did not timely object and the trial court entered judgment for the plaintiff after reduction for comparative negligence, the defendants continue to argue that a judgment in their favor should have been entered. The Third District accepted this argument and concluded that, because the jury found "no design defect," the jury could not have also found "negligence" in the design. Tricam Indus., 100 So. 3d at 111. This is merely an inconsistent verdict, however, and the very nature of all inconsistent jury verdicts is that the jury's "finding" as to one part of the verdict is mutually exclusive with the other finding, thus making the jury's intent unclear.

Based on our holding in this case that a timely objection is required, we conclude that the objection to the inconsistent verdict was waived. The purpose in

requiring that an objection be voiced before the jury is discharged is so that any inconsistency in a verdict may be corrected by the jury. If the proper relief to an inconsistent verdict was always a new trial, thus not providing the jury with an opportunity to correct its own inconsistency, there would be no need to voice an objection <u>prior</u> to the jury's discharge. Further, both parties have recognized that if the objection were waived, reinstatement of the original judgment should be ordered.[3] Thus, we hold that the trial court did not err in denying the defendants' motion to set aside the verdict, as the defendants failed to timely raise the inconsistent verdict.

## CONCLUSION

For all these reasons, we hold that a timely objection is required to an inconsistent verdict in a civil case and disapprove the use of the "fundamental nature" exception to the general law pertaining to inconsistent verdicts as has been carved out for products liability cases. In circumstances involving an inconsistent verdict, a party is still obligated to object prior to the time that the jury is discharged so the parties and the trial court can consider whether the jury's confusion can be rectified through additional jury instructions or a new verdict

---

3. The defendants agree that, if the judgment in their favor is set aside, reentry of the original judgment, rather than a new trial, should be the remedy in this case.

form.  If a party fails to timely object to an inconsistent verdict, that party waives the objection and unless there is no evidence to support one finding, the trial court may properly enter judgment pursuant to that verdict.

Our reaffirmation of the requirement of an objection serves numerous important policy concerns.  First, the requirement of a timely objection discourages gamesmanship by precluding objections that a party sat on, in an effort to obtain a calculated benefit by raising it later.  Second, our ruling enhances the efficiency of judicial proceedings, requiring the error to be raised immediately so that it can be rectified as soon as possible without increasing the likelihood that a new trial will be required.  Third, the requirement of a timely objection promotes the sanctity of the jury verdict and permits a jury to correct a clearly erroneous verdict that may be based on some underlying confusion brought on by the parties, the court, or the jury instructions.

Accordingly, we quash the Third District's decision applying the "fundamental nature" exception in Tricam Industries and remand to the district court with instructions that the case be returned to the trial court for entry of the original judgment in favor of Coba.  We further disapprove of the decisions in

NACRA, 480 So. 2d 669, and Nissan Motor, 891 So. 2d 4, because they are inconsistent with our holding.[4]

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

    Third District - Case No. 3D11-50

    (Miami-Dade County)

Roy D. Wasson of Wasson & Associates, Chartered, Miami, Florida; and Orlando D. Cabeza of DeMahy Labrador Drake Victor Payne & Cabeza, P.A., Coral Gables, Florida,

    for Petitioner

Jeffrey Arthur Mowers and Cindy Jane Mishcon of Lewis Brisbois Bisgaard & Smith LLP, Fort Lauderdale, Florida,

    for Respondents

---

4. We decline to reach the other issues raised by Coba regarding alleged juror misconduct and various evidentiary issues, as these claims are beyond the scope of the conflict. See DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 97 (Fla. 2013) (declining to address issues beyond the scope of the conflict on which this Court granted review).