DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BERMAN CONSTRUCTION & DEVELOPMENT, INC.,**
Appellant,

v.

**CARNAVAL HOME, LLC,** et al.,
Appellees.

No. 4D2024-2174

[April 22, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan Briscoe Frink, Judge; L.T. Case No. 062020CA002555AXXXCE.

Michael A. Rosenberg, George Richard Truitt, Jr., and Mitchell Irving Rozen of Cole, Scott & Kissane, P.A., Plantation, and Mark Boyle and Thomas Evan Shepard of Boyle Leonard Anderson, P.A., Fort Myers, for appellant.

Jesús E. Cuza, Christopher Noel Bellows, and Annelise Del Rivero of Holland & Knight LLP, Miami, for appellee.

SHERMAN, JAMES, Associate Judge.

This case arises from a contract to perform renovations on residential property. The property was destroyed by a fire of unknown origin while the renovations were still in progress. The owner sued the contractor and several subcontractors for damages caused by the fire, resulting in a judgment for the owner. We are required to decide whether the trial court erred in denying the contractor's request to include an interrogatory question on the verdict form asking whether the contractor should have been excused from performance under the contract's risk of loss provision as alleged in an affirmative defense. For the reasons set forth below, we find the trial court erred in denying the requested interrogatory question and thus reverse the final judgment and remand for a new trial.

# BACKGROUND

Carnaval Home, LLC ("the owner") hired Berman Construction ("the contractor") to renovate an existing, company-owned home. The contract between the parties set a substantial completion deadline of September 4, 2019.

The contract contained a risk of loss provision placing risk predominantly on the owner:

> § 15.9 Owner shall bear the risk of increased labor and materials costs and material and labor shortages. Owner shall bear the risk of loss, costs and damage to the Work caused by natural disasters, vandalism, arson, insect infestation and perils beyond Contractor's reasonable control.

The contractor then hired several subcontractors to carry out various aspects of the renovation, including an electrician and project supervisor. On July 29, 2019, with the renovation ninety-percent complete, a fire destroyed the house.

The owner sued the contractor for breach of contract, negligence, and violation of the Florida Building Code. The owner pursued its breach of contract claim primarily under the theory that the contractor had failed to deliver the renovated property by the substantial completion deadline, though additional breaches were raised.

At trial, the parties hotly contested the fire's cause. The owner presented evidence supporting its theory that faulty wiring in the attic ignited the fire, which spread quickly and engulfed the rest of the home. The contractor, in contrast, contended the fire was caused by arson or another cause beyond its control.

During the charge conference, the contractor requested an interrogatory question on the verdict form regarding the risk of loss provision as well as its other defenses of impossibility of performance and frustration of purpose. After extensive discussion, the trial court granted a directed verdict on the impossibility of performance and frustration of purpose defenses, finding that the express risk of loss provision foreclosed the availability of those equitable defenses. The trial court also denied the contractor's request to include a risk of loss question on the verdict form.

2

The verdict form submitted to the jury contained questions related to the claims for breach of contract, negligence, and building code violations, respectively. As to the breach of contract claim, the standard form used by the court asked:

> 1.a. Did [the owner] do all, or substantially all, of the essential things which the contract required it to do?
>
> 1.b. Was [the owner] excused from having to do all, or substantially all, of the essential things which the contract required it to do?
>
> 2. Did [the contractor] fail to do something essential which the contract required it to do?
>
> 3. Was [the owner] damaged by that failure?

The jury found the contractor was not negligent but had violated the building code. However, the jury also found the contractor's violations did not cause the owner's damages. Finally, the jury found that the contractor breached the contract and awarded the owner $928,850.00.

The trial court denied the contractor's post-trial motions and granted the owner's motion for attorneys' fees, finding the owner had prevailed on the significant issues.

## ANALYSIS

### The trial court correctly denied the contractor's post-trial motion for directed verdict on the breach of contract claim.

We review the denial of a motion for directed verdict de novo. *See Wheeler v. City of Fort Lauderdale*, 367 So. 3d 525, 527 (Fla. 4th DCA 2023). Absent legal error, the trial court's denial of a motion for directed verdict must be upheld if competent, substantial evidence supports the verdict for the non-movant. *See State Dep't of Child. & Fam. Servs. v. Amora*, 944 So. 2d 431, 435 (Fla. 4th DCA 2006).

The contractor contends a directed verdict was warranted because the owner did not present any evidence establishing the contractor was directly responsible for the fire. Without detailing all the evidence, this claim is undermined by a brief review of the record below.

3

At trial, the owner presented testimony showing that the fire occurred on the day when the electrical work was completed and power was restored to the interior of the house for the first time since construction began approximately ten months earlier. Throughout that time, the home was in the exclusive control of the contractor and its subcontractors. The owner also presented testimony from the carpenter, who was on the project that day, that the lights in the kitchen and family room went out while he was at the property between 5:00 p.m. and 8:00 p.m. This was corroborated by the owner's principal, Luis Ormo, who testified that when he arrived at the home at 9:00 p.m. that evening, the kitchen and family room lights were off. Ormo further testified that he attempted to turn on all of the lights, but some of them did not work. Finally, the owner presented expert testimony that the fire likely originated in the attic and was not the result of arson.

The contractor disputed the above evidence and offered its own evidence to the contrary. The contractor also advanced its theory that the fire was the result of arson. This included testimony that traces of gasoline were detected after the fire, evidence of unusual burn patterns on the first floor consistent with the presence of an accelerant, heat deformation on the bottom of the door frames, and expert opinion that the fire had multiple points of origin. The contractor also established the fire had engulfed the house and was emanating from the roof just twenty minutes after the owner had left the property. The contractor attempted to persuade the jury that the fire, absent arson, could not have so fully permeated the structure within that short period of time. The contractor also argued to the jury that the electrician and Ormo had dealings apart from and in violation of the contract, suggesting that some of the electrician's conduct was beyond the contractor's control.

The contractor directs our attention to what it contends are contradictory findings among the three causes of action. Specifically, the contractor argues that because the jury found the contractor was not negligent, and that its building code violations did not cause any damage, the jury necessarily found that the contractor was not responsible for the fire and was, therefore, excused from meeting the substantial completion deadline. These determinations are not necessarily irreconcilable, but even if they were, what the contractor describes is an inconsistency in the verdict. *See Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 643 (Fla. 2015) ("[A]n inconsistent verdict is defined as when two definite findings of fact material to the judgment are mutually exclusive."); *Crawford v. DiMicco*, 216 So. 2d 769, 771 (Fla. 4th DCA 1968) ("Where the findings of a jury's verdict in two or more respects are findings with respect to a definite fact

4

material to the judgment such that both cannot be true and therefore stand at the same time, they are in fatal conflict.").

The appellate remedy for an inconsistency, if preserved, is a new trial, not a directed verdict. *See Coba*, 164 So. 3d at 648-49 (recognizing that "the remedy [for an inconsistent verdict] is not to enter a judgment but to order a new trial so a new jury can make the necessary findings to resolve the case"). Regardless, we need not decide whether the verdict was truly inconsistent because the contractor did not raise the issue before the jury was discharged, and the contractor does not seek a new trial on that basis, only a directed verdict, which is an inappropriate remedy.

**The trial court erred in denying the contractor's request for a special interrogatory on the verdict form regarding the contractor's unresolved affirmative defense related to the risk of loss provision.**

As noted above, the fire's cause was the major issue in the case. Regarding the breach of contract claim, the owner's theory focused primarily on the contractor's failure to deliver the renovated property by the substantial completion deadline. In response, the contractor asserted impossibility as an affirmative defense, coupled with an argument that section 15.9 of the contract placed the risk of loss for fire on the owner.[1] At trial, the contractor moved the court to include an interrogatory on the verdict form asking the jury whether the contractor was excused from performance pursuant to one of its defenses.

We hold that the trial court abused its discretion in denying the contractor's request for a special interrogatory on the contractor's unresolved affirmative defense arising from section 15.9. We have previously explained that "[w]here interrogatory verdict forms are used, the verdict should include questions on the plaintiff's claims and the affirmative defenses." *See First Nat'l Bank of Lake Park v. Gay*, 694 So. 2d 784, 788 (Fla. 4th DCA 1997) (emphasis omitted). "Otherwise, the jury may not understand that the affirmative defenses must be considered in answering the questions." *Id.* By submitting the verdict form to the jury without a question asking whether the contractor was excused from

---

[1] We affirm the directed verdicts on the impossibility and frustration of purpose defenses. *See Vereit Real Est., L.P. v. Fitness Int'l, LLC*, 365 So. 3d 442, 449 (Fla. 3d DCA 2023) (recognizing that where an "agreement provides that a party assumes the risk that a future event may prevent the party from performing a contractual obligation, then the equitable defenses are unavailing in an action alleging the party's breach for non-performance").

5

performance under the risk of loss provision, the court left unresolved the major question in the case.

We recognize the contractor greatly complicated the trial court's job by submitting a proposed verdict form totaling eleven pages before ultimately narrowing its request over the course of trial. However, the contractor correctly insisted that the jury should have been allowed to determine whether it was excused from performance under the risk of loss provision. The contractor's defense was particularly significant given the jury's findings that the contractor was not negligent and that its building code violations did not cause the damage.

The owner responds that the trial court correctly denied the request for the interrogatory because the contractor had waived its demand for an arson-specific instruction and because, under the owner's interpretation of the risk of loss provision, the contractor bore the risk of loss from all non-arson induced fires. We find no such waiver occurred where the contractor made an unequivocal request for an interrogatory on its affirmative defense and was then assured by the trial court that neither "plaintiff nor defendant counsel has waived any issues that you've raised." Moreover, the record shows the contractor rightfully did not want to limit the question to arson-specific fires, given section 15.9's broader scope.

Relying on the canon of *expressio unius est exclusio alterius*, the owner argues that by expressly identifying arson as a peril for which the owner bore the risk of loss, the contract placed the risk of loss for all non-arson originated fires on the contractor. As a result, according to the owner, the contractor's rejection of an arson-specific inquiry additionally renders the contractor's request moot. We conclude this is an incorrect application of the canon.

*Expressio unius est exclusio alterius* (also known as the negative-implication canon) is a principle of contract interpretation by which the reader can infer that "the [express] mention of one thing implies the exclusion of another." *See Gabriji, LLC v. Hollywood E., LLC*, 304 So. 3d 346, 351 (Fla. 4th DCA 2020) (quoting *Brown v. State*, 263 So. 3d 48, 51 (Fla. 4th DCA 2018)). "The doctrine properly applies only when . . . the thing specified . . . can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, at 107 (2012) (citing Roland Burrows, *Interpretation of Documents* 67 (1943) and Henry Campbell Black, *Handbook on Construction and Interpretation of the Laws* 219 (2d ed. 1911)).

While *expressio unius* is a commonly used tool of construction, "it must be applied with great caution, since its application depends so much on context." *Id.* Not every positive statement of rights or obligations within a text carries a discernable, enforceable negative implication.[2]

We are persuaded that the owner misapplies the canon to section 15.9. Nothing in the provision signals limiting or constrictive language. On the contrary, section 15.9's final clause—"and perils beyond Contractor's reasonable control"—is expansive, approximating a catchall. Where the text "contains a broad catchall provision at the end of a list of specific items," *expressio unius* cannot be applied without rendering the catchall mere surplusage. *See WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 563 (Fla. 4th DCA 2019) (Gross, J., concurring specially) (citing *P.D. v. Dep't of Child. & Fams.*, 866 So. 2d 100, 102 (Fla. 1st DCA 2004) ("[A] court may not generally ignore or delete words used by the Legislature in a statutory provision . . .")). When read as a whole, section 15.9 places the risk of loss on the owner for all perils "beyond Contractor's reasonable control" including, for example "natural disasters, vandalism, arson, [and] insect infestation."

The contractor was thus entitled to have the jury decide on the verdict form whether the loss was caused by arson or a peril beyond the contractor's reasonable control, thereby excusing its performance under the contract.

## Conclusion

We reverse the final judgment for the owner, and remand for a new trial consistent with this opinion. Accordingly, we also reverse the trial court's order denying the contractor's motion for attorney's fees, because entitlement is dependent on the outcome of the new trial. We affirm on all other issues without comment.

*Affirmed in part, reversed in part, and remanded with instructions.*

---

[2] Consider the U.S. Constitution. The Ninth Amendment was included in the Bill of Rights, at the very least, to prevent expansion of federal powers through application of *expressio unius*. *See U.S. Const. amend. IX* ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."); Kurt T. Lash, *The Lost Original Meaning of the Ninth Amendment*, 83 Tex. L. Rev. 331, 336 (2004) (recognizing the amendment was necessary to prevent "latitudinarian interpretations"); *Gibson v. Matthews*, 926 F. 2d 532, 537 (6th Cir. 1991) (observing the Ninth Amendment was ratified to preclude use of *expressio unius* in construing the Bill of Rights).

Kᴜɴᴛᴢ, C.J., and Mᴀʏ, J., concur.

* * *

***Not final until disposition of timely-filed motion for rehearing.***