WINSOR, J.
There was a truck accident, there was a personal injury lawsuit, and there was a multimillion-dollar jury verdict. Then there were allegations of juror misconduct, which led to an order allowing juror interviews, which led to the certiorari petition we now address.
David Laycock, the plaintiff who obtained the verdict below, seeks a writ of certiorari to stop planned juror interviews before they begin — juror interviews that the defendant sought in connection with its pending motion for new trial. Because any harm Laycock might face can be remedied on appeal, we dismiss the petition.
I.
Alleging injuries from a 2012 accident, Laycock sued TMS Logistics, Inc., whose employee drove the tractor-trailer involved in the crash. In 2015, a jury attributed ninety-five percent fault to TMS’s driver and five percent to Laycock. The jury found total damages just over $3.5 million, inclusive of medical expenses and pain and suffering.
At a hearing days after the verdict, the trial court announced that a juror had contacted the court and spoken- to the judge’s assistant. TMS then announced that one of its attorneys, too, had spoken to jurors. According to an affidavit that attorney later submitted, two jurors approached her as she left the courthouse. They offered opinions on the case generally, along with specific details on jury deliberations. One juror “kept repeating that the jurors agreed not to follow the Court’s instructions.” TMS then sought more information.
Over Laycock’s objection, the trial court ordered a limited interview of one juror. Laycock filed no certiorari petition to stop it, and the interview went forward. After that, the trial court considered TMS’s motion to interview additional jurors. The court ultimately concluded that TMS “established by sworn factual allegations and the testimony of [the juror already interviewed] a prima facie case of juror misconduct.” That misconduct, the court continued, would require a new trial if found to be tru,e, unless Laycock could “demonstrate there is no reasonable possibility that the juror misconduct affected the verdict.” Accordingly, the court ordered that it would contact the remaining five jurors and schedule the interviews.[1]
II.
Laycock challenges the trial court’s decision, which he contends misapplied the standard for permitting post-verdict juror interviews. But before we consider the merits of this argument, we must first determine whether Laycock has shown “a *629 material injury that cannot be corrected on appeal, otherwise termed as irreparable harm.” Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 104 So.3d 344, 351 (Fla. 2012); accord Jaye v. Royal Saxon, Inc., 720 So.2d 214, 215 (Fla. 1998); AVCO Corp. v. Neff, 30 So.3d 597, 601 (Fla. 1st DCA 2010). Because this is a threshold jurisdictional question, we cannot grant the writ without such a showing — no matter how wrong the trial court might have been.
Laycock acknowledges the irreparable-harm requirement, and he argues the trial court’s order will cause that harm “by needlessly extending litigation in this matter, exploring the subjective motives of jurors, and invading the privacy of the jury deliberation room.” Pet. at 11; accord id. at 30-31 (explaining that “litigation would be extended in this matter without legal justification, the sanctity of the jury room would be violated, decades of jurisprudence and public policy would be eroded, and jurors would be unnecessarily harassed”). These harms, even if demonstrated, cannot provide a basis for our jurisdiction.
A.
The first asserted harm — needless continuation of litigation — requires little discussion. The Florida Supreme Court has made clear that “the continuation of litigation and any ensuing costs, time, and effort in defending such litigation does not constitute irreparable harm.” Rodriguez v. Miami-Dade County, 117 So.3d 400, 405-06 (Fla. 2013); accord AVCO Corp., 30 So.3d at 601 (“We have repeatedly declined to grant certiorari review to orders that petitioners claim will cause irreparable harm due to payment of unnecessary litigation and defense expenses.”). Where that is the asserted injury, “the use of certiorari review is improper.” Rodriguez, 117 So.3d at 405.[2]
B.
The second asserted harm — injury to jurors or the sanctity of their process— presents a more complicated question. Other district courts’ decisions have found this sufficient, most notably in Pesci v. Maistrellis, 672 So.2d 583 (Fla. 2d DCA 1996). In Pesci, the court exercised certio-rari jurisdiction based on perceived harm to the “sanctity of jury deliberations.” Id. at 585. The court noted the longstanding rule of “prohibiting litigants or the public from invading the privacy of jury deliberations,” and it concluded that without cer-tiorari review of juror-interview orders, “the continuing vitality of this fundamental principle would be irreparably and materially harmed.” Id. The Fifth District followed that same path, albeit with less detailed justification. In Orange County v. Piper, 585 So.2d 1182 (Fla. 5th DCA 1991), the court disagreed with the trial court’s decision to allow juror interviews and announced that it “grant[ed] certiorari to prohibit invasion of the sanctity of jury deliberations.” Id. at 1182. It did not otherwise address the irreparable-harm jurisdictional threshold.
*630 The problem with relying on harm to jurors or the jury process is that “it is settled law that, as a condition precedent to invoking a district court’s certiorari jurisdiction, the petitioning party must establish that it has suffered an irreparable harm that cannot be remedied on direct appeal.” Jaye, 720 So.2d at 215 (emphasis added); accord San Perdido Ass’n, 104 So.3d at 353 (certiorari unavailable unless “the party will suffer irreparable harm”) (emphasis added); Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 455 (Fla. 2012) (certiorari unavailable “[i]f the party seeking review does not demonstrate that it will suffer material injury of an irreparable nature”) (emphasis added). Neither alleged harm to “the sanctity of jury deliberations,” Pesci, 672 So.2d at 585, nor any ethereal injury to “the civil trial process,” Pet. at 12, equals harm to Laycock.
We acknowledge that all five Florida district courts, including this one, have addressed the merits of certiorari petitions dealing with juror interviews. See Penalver v. Masomere, 178 So.3d 533 (Fla. 3d DCA 2015); Naugle v. Philip Morris USA, Inc., 133 So.3d 1235 (Fla. 4th DCA 2014); State v. Monserrate-Jacobs, 89 So.3d 294 (Fla. 5th DCA 2012); Hannon v. Shands Teaching Hosp. & Clinics, Inc., 56 So.3d 879 (Fla. 1st DCA 2011); Harbour Island Sec. Co. v. Doe, 652 So.2d 1198 (Fla. 2d DCA 1995). But these cases did not address — or even mention — the irreparable-harm component, and we cannot view these as holding that irreparable harm to “the party seeking review,” Bd. of Trs. of Internal Improvement Tr. Fund, 99 So.3d at 455, is not required when it comes to juror interviews. Cf. Gretna Racing, LLC v. Dep’t of Bus. & Prof'l Regulation, 178 So.3d 15, 23 (Fla. 1st DCA 2015) (rejecting argument that earlier decision “implicitly held” that which it “didn’t even mention”), review granted sub nom. Gretna Racing, LLC v. Fla. Dep’t of Bus. & Prof'l Regulation, SC15-1929, 2015 WL 8212827 (Fla. Dec. 1, 2015); Hargrett v. Toyota Motor Sales U.S.A., Inc., 705 So.2d 1009, 1009 (Fla. 4th DCA 1998) (rejecting reliance on certiorari decision that presented “similar circumstances” but “did not explain ... how the order would cause irreparable harm which could not be cured by final appeal”). Like the United States Supreme Court, we recognize that one court’s addressing an issue on the merits without discussing jurisdictional limitations does not constitute a holding that jurisdiction existed. See, e.g., Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 144, 131 S.Ct. 1436, 179 L.Ed.2d 523 (2011) (“When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.”); Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (noting that “drive-by jurisdictional rulings” have no precedential effect).
For similar reasons, the Florida Supreme Court’s decision in Baptist Hospital of Miami, Inc. v. Maler, does not guide us on this issue. 579 So.2d 97 (Fla. 1991). In Baptist, the supreme court did approve a Third District decision granting certiorari and halting juror interviews, but it did so without ever addressing irreparable harm. The jurisdictional prerequisite for certiora-ri jurisdiction was not at issue: The court granted review to resolve a certified inter-district conflict regarding the applicable standard for determining whether to allow juror interviews in the first place — an issue distinct from the irreparable-harm inquiry. See id. at 100 (‘We hold that an inquiry is never permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial .... ”). Indeed, the case creating the certified conflict— *631 Preast v. Amica Mutual Insurance Company, 483 So.2d 83 (Fla. 2d DCA 1986)—was a direct appeal, not a certiorari proceeding.
It is perhaps tempting to view the Florida Supreme Court’s Baptist decision as creating a special exception to the irreparable-harm-to-the-petitioner requirement, essentially eliminating it in juror-interview cases. The court did, after all, approve a decision that granted certiorari, without breathing a word about such harm. But long before Baptist, the Florida Supreme Court established an exacting standard for certiorari review, always requiring irreparable harm to the petitioner. See, e.g., Chambers v. St. Johns County, 94 Fla. 814, 114 So. 526, 527 (1927) (“The proceedings complained of do not show such vital irregularity with irremediable injury to the petitioners as to justify the issuing of a writ of certiorari.”); Am. Ry. Express Co. v. Weatherford, 84 Fla. 264, 93 So. 740, 742 (1922) (“Generally stated, a writ of certio-rari may, in the discretion of the court, be issued where it is duly made to appear, at least prima facie, that the record of a lower court shows that the proceedings in a cause have violated established principles of law, or that the adjudication in the case is a palpable miscarriage of justice, and that the result is a substantial injury to the petitioner, who has no other remedy, and seeks a writ of certiorari.”). And the court has consistently reminded lower courts and litigants that it does not overrule itself without saying so. See Puryear v. State, 810 So.2d 901, 905 (Fla. 2002) (“[Tjhis Court does not intentionally overrule itself sub silentio.”); see also Roberts v. Brown, 43 So.3d 673, 683 (Fla. 2010) (“Had we intended to overrule our prior declaration ..., we would have done so in a more definite and express manner.”). We therefore cannot interpret Baptist to modify longstanding precedent it did not address.
III.
Finally, Laycock argues that there are substantial policy benefits of our having interlocutory review of orders like the one at issue. But “the writ of certiorari cannot be used simply because strong policy reasons support interlocutory review.” San Perdido Ass’n, 104 So.3d at 353. Instead, policy matters are considered when the supreme court — not this court — determines which categories of non-final orders warrant immediate review under rule 9.130. Id. at 348 (noting that Florida Supreme Court “weighs the importance of having interlocutory review in light of potential drawbacks, such as increased appellate workload and concomitant delay in the resolution of the case”); cf. also Keck v. Eminisor, 104 So.3d 359, 366 (Fla. 2012) (rejecting expansion of certiorari review for denials of individual immunity but ordering change to rule 9.130 to allow appeal of those non-final orders). Certiorari “should not be used to circumvent the interlocutory appeal rule,” which the supreme court has carefully limited. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla. 1987), superseded by statute on other grounds, as stated in Williams v. Oken, 62 So.3d 1129, 1134 (Fla. 2011); see also San Perdido Ass’n, 104 So.3d at 348 (noting that list of appealable non-final orders is “carefully created”).
If the interviews go forward and lead to an order granting a new trial, then Lay-cock can appeal that order. See Fla. R. App. P. 9.110(a)(3) (authorizing appeal of order granting new trial). That makes his harm (if any) quite reparable.[3] Because *632 Laycock has not shown irreparable harm to himself, and because we cannot base our jurisdiction on harm to the “sanctity of jury deliberations,” Pesci, 672 So.2d at 585, we lack jurisdiction. We therefore dismiss the petition without reaching the merits, but we certify conflict with Pesci v. Maistrellis, 672 So.2d 583 (Fla. 2d DCA 1996).
DISMISSED; CONFLICT CERTIFIED.
OSTERHAUS, J., concurs; MAKAR, J., concurs in part and dissents in part with opinion.

. This court stayed the lower court's order pending resolution of this petition.

. In San Perdido Association, Inc., after noting that it had "never held that requiring a party to continue to defend a lawsuit is irreparable harm for the purposes of invoking the jurisdiction of an appellate court to issue a common law writ of certiorari,” the Florida Supreme Court articulated the far-reaching consequences of an opposite rule: "To hold otherwise would mean that review of every non-final order could be sought through a petition for writ of certiorari. Under such a ruling, appellate courts would be inundated with petitions to review non-final orders and trial court proceedings would be unduly interrupted.” 104 So.3d at 353.

. Direct appeals frequently address orders that granted juror interviews. See, e.g., Simon v. Maldonado, 65 So.3d 8 (Fla. 3d DCA 2011); Ray Cooke Enters., Inc. v. Parsons, 627 So.2d 1267 (Fla. 4th DCA 1993); City of Winter Haven v. Allen, 589 So.2d 968 (Fla. 2d DCA *632 1991); Dover Corp. v. Dean, 473 So.2d 710 (Fla. 4th DCA 1985).