# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2440
LT Case No. 2019-CA-2972

_____

WILLIAM HUETHER, III, M.D.,
and ADVENTIST HEALTH
SYSTEM/SUNBELT, INC. d/b/a
Adventhealth Altamonte
Springs f/k/a Florida Hospital
Altamonte,

     Petitioners,

     v.

VALERIA BARONI,

     Respondent.

_____


Petition for Certiorari Review of Order
from the Circuit Court for Seminole County.
Susan Stacy, Judge.

Dinah S. Stein, of Hicks, Porter, Ebenfeld & Stein, P.A., Miami,
and Craig S. Foels, of Estes, Ingram, Foels & Gibbs, P.A.,
Maitland, for Petitioners.

Landis V. Curry, III, of Paul Knopf Bigger, Tampa, for
Respondent.

August 20, 2024


SOUD, J.

Petitioners, William D. Huether, III, M.D., and Florida Hospital Altamonte seek certiorari relief from this Court, asking us to quash the trial court's order permitting the post-verdict interview of a juror. We deny the petition.

I.

Respondent Valeria Baroni sued Huether and Florida Hospital alleging she suffered damages that resulted from medical malpractice. After more than three years of litigation, a five-day jury trial was held wherein Huether and Florida Hospital prevailed. Five days after the defense verdict, Baroni filed a motion seeking a new trial because of alleged concealment of information by a juror during voir dire and his further misconduct during trial.

Specifically, during jury selection, the juror at issue, J.L., was asked by the trial court, "have you been involved in a lawsuit before?"[1] J.L. responded, "Never." This answer is devoid of equivocation or uncertainty. It is clear and unambiguous—just as was the trial court's question to him.

Baroni alleged in her motion for new trial that J.L. was involved in no fewer than five prior litigations. Two of the prior cases were civil cases in which J.L. was the named defendant. One of these cases was filed in 2017 but was voluntarily dismissed without prejudice because J.L. filed for bankruptcy. His bankruptcy case was litigated for years until November 2022—just two months before jury selection in the case *sub judice*. J.L. also was the defendant in two criminal cases filed against him—one

---

[1] J.L. was prospective juror number 20 (out of 40) during voir dire. As a result, he heard the same question presented to each of the nineteen jurors before him. The trial court's phrasing of the question varied slightly when posed to each juror individually. For example, the trial court would phrase the question as: "have you ever been sued or have you ever sued anyone?"; "have you been sued or have you sued anyone?"; "have you been sued or did you sue anyone?"; and the like. Thus, the trial court's question to J.L. was straightforward.

charging domestic battery in April 2021, and the other resulting in an adjudication of guilt for DUI causing damage/injury in 1998.

Baroni's motion for new trial also asserted that J.L. violated the trial court's clear and repeated instruction not to communicate about the case by any means, including social media. The motion alleged that J.L. posted on Facebook about the case during jury selection and repeatedly during the trial, including a statement that he was "acting crazy" during jury selection (and receiving suggestions on how to get out of jury duty), responding to comments on his original posts, posting during trial that "a good trial attorney is like a ninja," and giving a "thumbs up" to a commentor's statement, "not guilty." Baroni attached screenshots of J.L.'s Facebook page to her motion.

Following a hearing on Baroni's motion, the trial court entered its Preliminary Order and Findings on Plaintiff's Motion for New Trial, whereby it "reserve[d] ruling on [Baroni's motion for new trial] until after a juror interview can be held." This petition followed.

## II.

The discretionary common law writ of certiorari is an "extraordinary remedy," providing an appellate court "the prerogative to reach down and halt a miscarriage of justice where no other remedy exists." *See Adventist Health Sys./Sunbelt, Inc. v. Machalek*, 383 So. 3d 534, 536–37 (Fla. 5th DCA 2023) (quoting *Univ. of Fla. Bd. of Trs. v. Carmody*, 372 So. 3d 246, 251–52 (Fla. 2023)). However, "[t]he writ never was intended to redress mere legal error," *see id.* at 537, and certiorari is not available simply because an order under review is not otherwise appealable. *See Abbey v. Patrick*, 16 So. 3d 1051, 1053–54 (Fla. 1st DCA 2009).

Here, the petitioners must demonstrate that the challenged order (1) departs from the essential requirements of law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on post-judgment appeal. *See Dep't of Child. & Fams. v. State*, 380 So. 3d 1263, 1267 (Fla. 5th DCA 2024). The last two requirements, combined into the concept of "irreparable harm," are jurisdictional and must be found to exist before we

3

consider whether the order departs from the essential requirements of law. *See id.*

A.

If the order requiring J.L. to be interviewed departs from the essential requirements of law, irreparable harm would exist.

Initially, we note that Florida law has long recognized that post-verdict juror interviews are strongly disfavored and should be rare. *See Child.'s Med. Ctr., P.A. v. Kim*, 221 So. 3d 664, 668 (Fla. 4th DCA 2017). "[T]he sanctity of the jury process as well as the privacy rights of the jurors themselves should be *closely guarded and protected.*" *Id.* (emphasis added) (quoting *Sterling v. Feldbaum*, 980 So. 2d 596, 599 (Fla. 4th DCA 2008)). In doing so, Florida law protects jurors from over-reaching and discontented counsel that may seek to badger them following a verdict. *Id.*

As a result, Florida appellate courts, including this Court, have repeatedly held that certiorari is a proper vehicle to review orders requiring a post-verdict juror interview. *See e.g.: State v. Monserrate-Jacobs*, 89 So. 3d 294, 296 (Fla. 5th DCA 2012); *Orange County v. Piper*, 585 So. 2d 1182 (Fla. 5th DCA 1991); *Hannon v. Shands Teaching Hosp. & Clinics, Inc.*, 56 So. 3d 879 (Fla. 1st DCA 2011); *Pesci v. Maistrellis*, 672 So. 2d 583, 585 (Fla. 2d DCA 1996); *Parra v. Cruz*, 59 So. 3d 211 (Fla. 3d DCA 2011); *Naugle v. Philip Morris USA, Inc.*, 133 So. 3d 1235 (Fla. 4th DCA 2014).[2]

One lone case from the First District Court of Appeal parts ways with this precedent. In *Laycock v. TMS Logistics, Inc.*, 209 So. 3d 627, 629 (Fla. 1st DCA 2017), the esteemed majority, in its reasoned and artful answer to "the more complicated question" of whether harm "to jurors and the sanctity of their process" invokes the certiorari jurisdiction of the court, answered in the negative in dismissing the petition. We respectfully disagree—both with the question as phrased and the answer thereto.

---

[2] We are not aware of any case in which the Sixth District Court of Appeal has addressed this question.

4

In deciding whether irreparable harm would exist in this case, we need not limit our jurisdictional analysis to the consideration of the privacy rights of jurors. And it must be remembered—it is not "*their* process" alone. *See id.* (emphasis added).

Jurors are "member[s] of the court." *See Clark v. United States,* 289 U.S. 1, 11 (1933).[3] Thus, when the trial court orders a post-verdict juror interview, it implicates not just the privacy rights of an individual juror, but the very construct and process of the court itself. An erroneous interview harms not only the "member of the court" subjected to the interview, it injures the court. Far from an "ethereal injury," *see Laycock*, 209 So. 3d at 630, the harm is proximate, palpable, and profound. Improperly subjecting a juror to a post-verdict interview chills (i) a citizen's willingness to participate in the sacred privilege and noble duty of jury service, as well as (ii) a jury's ability to deliberate and decide the case on the facts and the law. As a result, *this unique harm* strikes at the very core of the court's work. And all parties before the court—including the petitioners before us—are inevitably harmed as well because the proper functioning of the judicial system ordained and established by the People is materially impaired. While an appellate court may be able on appeal to correct a party being wrongly deprived of a favorable verdict or the denial of a necessary new trial, we cannot repair the multi-dimensional injuries caused by an erroneous juror interview *after* that interview has occurred.

Therefore, we conclude we have jurisdiction. Florida appellate courts are not obliged to stand by and helplessly watch as a juror is wrongly subjected to a post-verdict interview. Rather, when necessary, certiorari is an appropriate means by which we may closely protect a juror, the parties, and the jury trial system Florida citizens so justly rely upon.

B.

That said, the trial court's order requiring J.L.'s interview did not depart from the essential requirements of law.

---

[3] *See infra* n.7.

In this case, Baroni did not file a motion seeking to interview J.L. *See* Fla. R. Civ. P. 1.431(h). Rather, the trial court reserved ruling on Baroni's motion for new trial and required J.L. to be interviewed so that the trial court could fully consider the nature of any prejudice to Baroni and the merits of her motion. The trial court was well within its discretion in doing so.

As an initial matter, had Baroni learned of J.L.'s purported misconduct during trial and brought it to the trial court's attention (as she did following trial), it is entirely likely the same process employed here would have been followed during trial. J.L. would have been called to the courtroom individually and outside the presence of the other jurors to discuss his prior answers during jury selection and his social media conduct so that the court and counsel could understand the nature and motives of his actions and the prejudice to the parties. Following that interview, counsel could make any motions warranted and the trial judge would rule. This same procedure employed after the verdict, which the trial judge determined necessary so that she could properly consider Baroni's motion for new trial, does not depart from the essential requirements of law.

Further, even though Florida law rightly makes post-verdict juror interviews rare, where adequate proof suggests that a juror has acted improperly and contrary to lawful instructions of the trial court, an interview of the offending juror is appropriate. *See Hillsboro Mgmt., LLC v. Pagono*, 112 So. 3d 620, 624 (Fla. 4th DCA 2013). In this case, the interview of J.L. is the product, not of a request of counsel, but of a court order. It is born, not from a lawyer or party who may be over-reaching, but from the potential abject recalcitrance of an offending juror whom Baroni claims engaged in misconduct in two ways.

First, Baroni alleged J.L. posted comments to social media in violation of the trial court's repeated instructions. While the trial court determined the social media posts "*alone*" do not show Baroni was substantially prejudiced, the trial court reasonably found that his "thumbs-up" response to a commentor's posting "not guilty" was "of particular concern."

Additionally, Baroni also argued that J.L. failed to disclose five prior cases with which he was involved, all of which the trial

6

judge preliminarily found to be relevant in her well-reasoned order. Two of the cases were prior civil litigations where J.L. was the defendant. Two cases were criminal cases involving allegations of conduct by J.L. causing bodily injury to another. When he was asked individually by the trial judge herself whether he had ever been involved in prior lawsuits,[4] his response was plain (and seemingly false): "Never."

> It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct, is prejudicial to the party, for it impairs his right to challenge.

*De La Rosa v. Zequeira*, 659 So. 2d 239, 241 (Fla. 1995) (quoting *Loftin v. Wilson,* 67 So. 2d 185, 192 (Fla. 1953)).

Correspondingly, "[l]awyers representing clients in litigation are entitled to ask, and receive truthful and complete responses to, the relevant questions which they pose to prospective jurors. They are entitled to evaluate this information in determining whether to seek to excuse prospective jurors on peremptory challenge or for cause." *Roberts v. Tejada*, 814 So. 2d 334, 342 (Fla. 2002) (citing *Loftin*, 67 So. 2d at 192).

Here, the trial judge ordered the interview of J.L. "to evaluate the issue of [his] concealment" of the prior lawsuits. Rightly so. By his definitive and unequivocal answer denying any history of being involved in lawsuits, it appears quite possible that J.L. concealed[5]

---

[4] *See supra* n.1.

[5] "Overall, '[i]nformation is considered concealed . . . where the information is "squarely asked for" and not provided.'" *Taylor v.*

7

material information from the court and counsel. J.L.'s potential concealment, independently and when considered together with his "thumbs up" reply to a commentor's statement "not guilty," may have impacted Baroni's view of J.L.'s impartiality in this case and her decision whether to challenge J.L. As a result, this information establishes a sufficient basis of concern to permit a post-verdict interview so that the trial court may determine what, if any, prejudice was suffered by Baroni in ruling on Baroni's motion for new trial.[6]

### III.

Accordingly, as the trial court did not depart from the essential requirements of law and properly required the post-verdict interview of the offending juror, the petition is DENIED. In denying this petition, our opinion is limited to permitting the interview of the offending juror.[7] We express no opinion as to the substantive merits of Baroni's motion for new trial.

---

*Magana*, 911 So. 2d 1263, 1268 (Fla. 4th DCA 2005) (quoting *Birch v. Albert,* 761 So. 2d 355, 358 (Fla. 3d DCA 2000)).

[6] It is noteworthy that Justice Overton dissented in *De La Rosa*, concluding:

> Before a party to a lawsuit should be denied the benefit of a favorable verdict and forced to endure the time and expense of a new trial based on juror misconduct, the trial court should, at a minimum, interview the juror, with the attorneys present, and then make a finding of whether the conduct was intentional and whether any party was prejudiced.

*De La Rosa*, 659 So. 2d at 242 (Overton, J., dissenting). While we do not suggest that a jury interview is required before ruling on a motion for new trial such as this, the reasonableness of the trial court's approach is supported by Justice Overton's view.

[7] If the trial court determines that J.L. willfully and deliberately engaged in misconduct that was sufficiently prejudicial to require a new trial, the trial judge would be within

8

Further, we CERTIFY CONFLICT with *Laycock v. TMS Logistics, Inc.*, 209 So. 3d 627, 629 (Fla. 1st DCA 2017).

It is so ordered.

BOATWRIGHT and MacIVER, JJ., concur.

---

her discretion to take the rare and extraordinary step of commencing contempt proceedings against him. "Concealment or misstatement by a juror upon a voir dire examination is punishable as a contempt if its tendency and design are to obstruct the processes of justice." *Clark,* 289 U.S. at 10.

> A talesman when accepted as a juror becomes a part or member of the court. The judge who examines on the voir dire is engaged in the process of organizing the court. If the answers to the questions are willfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham.

*Id.* at 11 (citation omitted); *see also DeMartin v. State*, 188 So. 3d 87, 92 (Fla. 4th DCA 2016) (quoting *Clark*, 289 U.S. at 10). When prospective jurors make misstatements or conceal information from the court and counsel, such misconduct is (i) corrosive to the very core of the judicial system and (ii) highly prejudicial to parties who would be forced to endure the considerable attorney's fees and costs involved in retrial—particularly in a medical malpractice case such as this. Such conduct simply cannot—and will not—be accepted by the courts of this State.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____